129 Cal.Rptr.2d 15 (2002)
104 Cal.App.4th 1401
In re ANTOINETTE S., a Person Coming Under the Juvenile Court Law.
Orange County Social Services Agency, Plaintiff and Respondent,
v.
R.S., Defendant and Appellant.
No. G030583.
Court of Appeal, Fourth District, Division Three.
December 31, 2002.
Review Denied April 23, 2003.
*18 Stephen S. Buckley, under appointment by the Court of Appeal, for the Minor.

OPINION
ARONSON, J.
R.S. (father) contends the juvenile court's failure to comply with the notice provisions of the Indian Child Welfare Act (ICWA, or the Act) deprived the court of jurisdiction to terminate his parental rights to five-year-old Antoinette S. The court held the termination hearing without waiting "at least ten days after receipt of notice" by the Secretary of the Interior. (25 U.S.C. § 1912(a); subsequent statutory citations are to this title unless otherwise noted.) While broad language utilized by some of our sister Courts of Appeal and other state courts suggests such error is jurisdictional, we agree with those courts reaching the opposite conclusion. In our view, the error is not jurisdictional. Nor does it always require reversal or remand for strictly proper notice. Here, the failure to ensure a 10-day window after notice to the Secretary was harmless. Finally, father's argument that the court should have applied the substantive provisions of the ICWA is also without merit. We therefore affirm the judgment.

I
Orange County Social Services Agency (SSA) placed a hospital hold on then four-year-old Antoinette because blood tests ruled out her mother's explanation that she "bruises easily" and because of suspicion her bowel obstruction was caused by blunt force trauma to her stomach. X-rays showed two healing rib fractures that did not surprise or shock mother but which she could not explain. Mother admitted Antoinette had been vomiting for six weeks and had lost 10 to 15 pounds before being brought to the hospital.
SSA filed a dependency petition alleging serious physical harm to Antoinette and *19 failure to protect her. A box checked on the petition indicated, "Child may be of Indian ancestry." The record does not disclose what information prompted SSA to check that box. At the initial detention hearing mother denied she or father had any Indian heritage. Taking mother at her word, the juvenile court and SSA proceeded as if the ICWA did not apply. Neither mother nor father ever suggested to the trial court in any subsequent proceeding that the Act applied.
SSA made repeated efforts over the next nine months to locate Antoinette's father, to whom mother was married but had not seen for more than two years. The social worker finally received a voice mail from father two weeks before the termination of parental rights hearing. Father was incarcerated and had not seen Antoinette since "early last year some time before I got busted for drugs." He explained his absence this way: "I got busted [for possession of drugs] and then was in and out of jail a few times last year. I have been around Anaheim when I am not in jail."
Father told the social worker he believed his deceased maternal grandparents had Native American ancestry. In response to the worker's inquiries, father was not able to provide birth dates for either his grandmother or his grandfather, nor was he even sure of their names. He did not know whether they were members of any tribe. Father himself was not a member of any tribe.
Nevertheless, SSA sent notice regarding Antoinette's possible Indian heritage to the appropriate regional Bureau of Indian Affairs (BIA) office of the Department of the Interior the day before the termination hearing. The notice included a form entitled, "REQUEST FOR CONFIRMATION OF CHILD'S STATUS AS INDIAN." The form listed Antoinette's name, sex, birth date, and birthplace (Anaheim, CA). It also contained mother's married and maiden names, her birth date, birthplace (Mexico City, Mexico), and similar information for father (birthplace: Orange, CA), as well as mother's and father's definitive, "No," regarding whether they were enrolled tribal members. The names of Antoinette's maternal grandmother, paternal grandparents, and paternal great grandparents were provided, but their birth dates, birthplaces, tribal affiliations, and enrollment statuses were reported as "unknown." SSA attached a copy of Antoinette's birth certificate. In the "Remarks" section of Antoinette's family history, the social worker wrote: "Child's birth father claimed his maternal grandparents . . . had Indian ancestry in their fam[ily] background. He reports both grandparents to be deceased. He was not able to identify a particular tribal affiliation."
SSA sent a similar notice to the State Department of Social Services (DSS) for help in determining whether Antoinette might be an Indian child. In her cover letter, the social worker stated, "Antoinette's birth father reports that his maternal grandparents have some type of Indian ancestry in their background. [¶] Unfortunately, I was unable to obtain very much information regarding the extent of his family's Indian [a]ncestry from the child's birth father. . .. The birth mother states that she is not aware of any Indian [heritage within her family of origin."
Father appeared at the termination hearing, where neither he, SSA, nor the court raised the issue of his possible Indian ancestry; nor was the possible applicability of the ICWA addressed. The court terminated parental rights. Mother does not appeal on any ground, but father now raises the ICWA for the first time on appeal.

*20 II

Preliminary Issues: Should the Merits Be Reached?
We deal briefly with two preliminary issues raised by SSA regarding whether we should reach the merits of father's arguments.
First, father's claim that his grandparents had Native American ancestry, and that Antoinette therefore does as well, was sufficient to trigger the notice requirements of the Act, notwithstanding SSA's insistence the information was too vague. The ICWA provides that "where the court knows or has Reason to know that an Indian child is involved, the party seeking the foster care placement of, or termination of parental rights to, an Indian child shall notify the parent or Indian custodian and the Indian child's tribe, by registered mail with return receipt requested, of the pending proceedings and of their right of intervention." (25 U.S.C. § 1912(a), italics added.) That the identity of the tribe is not known does not discharge SSA from the requirement of giving notice. Section 1912(a) provides that in such cases "notice shall be given to the Secretary in like manner. . .." "Secretary" means the Secretary of the Interior (25 U.S.C. § 1903(11)), and notice to the Secretary is accomplished by notice to the BIA. (In re Edward H. (2002) 100 Cal.App.4th 1, 4, 122 Cal.Rptr.2d 242; see 25 U.S.C. § la [delegating Secretary's duties to BIA].) The purpose of notice to the BIA is that it "presumably has more resources and skill with which to ferret out the necessary information" (In re Desiree F. (2000) 83 Cal.App.4th 460, 469, 99 Cal.Rptr.2d 688 (Desiree F.)), such as which tribe or tribes might be entitled to notice.[1]
SSA suggests father's general claim of his Native American heritage did not give the juvenile court reason to know Antoinette was in fact an "Indian child" within the meaning of the ICWA, and thus notice was not required. The ICWA defines an Indian child as an unmarried person under the age of 18 who "is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe." (25 U.S.C. § 1903(4).) Father and mother admitted they were not enrolled members of any tribe, but that is not dispositive because enrollment is not the sole means to establish tribal membership. (Dwayne P. v. Superior Court (2002) 103 Cal.App.4th 247, 254, 126 Cal. Rptr.2d 639 (Dwayne P.)) [noting that "a child may qualify as an Indian child within the meaning of the ICWA even if neither of the child's parents is enrolled in the tribe"]. In any event, SSA's argument fails to "distinguish between a showing that may establish a child is an Indian child within the meaning of the ICWA and the minimal showing required to trigger the statutory notice provisions." (Id. at p. 258,126 Cal.Rptr.2d 639.)
After an exhaustive analysis, the court in Dwayne P. recently concluded the "minimal showing" required to trigger notice under the ICWA is merely evidence "suggesting]" the minor "may" be an Indian *21 child within purview of the Act. (Dwayne P., supra, 103 Cal.App.4th at p. 258, 126 Cal.Rptr.2d 639.) We agree. Congress has recognized "there is no resource that is more vital to the continued existence and integrity of Indian tribes than their children and that the United States has a direct interest, as trustee, in protecting Indian children who are members of or are eligible for membership in an Indian tribe." (25 U.S.C. § 1901(3).) The purpose of the ICWA is therefore to "protect the best interests of Indian children and to promote the stability and security of Indian tribes and families by the establishment of minimum Federal standards for the removal of Indian children from their families. . .." (25 U.S.C. § 1902.) Because of the important interests at stake, courts around the country "have interpreted the ICWA notice provision broadly." (Dwayne P., supra, 103 Cal.App.4th at pp. 256-257, 126 Cal. Rptr.2d 639 [citing cases]; see, e.g., In re M.C.P. (1989) 153 Vt. 275, 571 A.2d 627, 634-635 ["it is preferable to err on the side of giving notice . . ."].)
As noted in Dwayne P., the federal guidelines for Indian child custody proceedings provide that a court "has reason to believe a child involved in a child custody proceeding is an Indian" when, among other things, "[a]ny public or state-licensed agency involved in child protection services . . . has discovered information which suggests that the child is an Indian child" and when "[a]n officer of the court involved in the proceeding has knowledge that the child may be an Indian child." (Guidelines for State Courts; Indian Child Custody Proceedings, 44 Fed.Reg. 67584 (Nov. 26, 1979), italics added; Dwayne P., supra, 103 Cal.App.4th at p. 255, 126 Cal.Rptr.2d 639 [acknowledging that the guidelines are not binding on state courts].) Similarly, rule 1439(d) of the California Rules of Court states that the "circumstances that may provide probable cause for the court to believe the child is an Indian child include," inter alia, when "[a] party . . . provides information suggesting that the child is an Indian child." (Italics added.)
Here, SSA filed a petition indicating Antoinette "may be of Indian ancestry." Mother denied Indian heritage at the detention hearing but father later claimed his grandparents were of Native American ancestry. Because "biological descendance" is often a prerequisite for tribal membership,[2] we hold father's suggestion that Antoinette "might" be an Indian child was enough to trigger notice in this case. Given the interests protected by the Act, the recommendations of the guidelines, and the requirements of our court rules, the bar is indeed very low to trigger ICWA notice. It was met here by the suggestion of Indian ancestry, and SSA's argument therefore has no merit.
Father's failure to raise the ICWA's notice requirement below did not waive the issue on appeal. "Because the notice requirement is intended, in part, to protect the interests of Indian tribes, it cannot be waived by the parents' failure to raise it." (In re Marinna J. (2001) 90 Cal.App.4th 731, 733, 109 Cal.Rptr.2d 267.) The right to raise the issue for the first time on appeal is not limited solely to the affected tribes. Instead, "any parent . . . *22 may petition any court of competent jurisdiction to invalidate" foster care placement or termination of parental rights "upon a showing that such action violated any provision of sections 1911, 1912, and 1913." (25 U.S.C. § 1914.) Thus, because it is critical to the tribes in which the dependent child may have existing or future membership, and because tribes depend on parents in the first instance to notify state social workers and courts of known or potential Indian ancestry, parents who have failed to raise the notice issue below may raise it on appeal. (In re Marinna J., supra, 90 Cal.App.4th at p. 738, 109 Cal. Rptr.2d 267 [observing that "notice is absolutely critical under the Act, for one of the Act's major purposes is to protect and preserve Indian tribes"].) Based on this authority, we turn next to the merits of father's appeal.

III

A Violation of Section 1912(a)
Father is correct that the juvenile court and SSA failed to abide by the plain notice requirements of section 1912(a). The juvenile court violated section 1912(a) by holding the termination hearing less than 10 days after the BIA received notice on behalf of the Secretary of the Interior. Section 1912(a) provides: "No foster care placement or termination of parental rights proceeding shall be held until at least ten days after receipt of notice by the parent or Indian custodian and the tribe or the Secretary." (Italics added.) SSA clearly violated section 1912(a) by sending notice to the BIA just one day before the termination hearing.
Apart from notice to the Secretary, SSA was not required to notify any particular tribe regarding Antoinette's possible Indian heritage. Indeed, SSA could not have done so, given the lack of information provided by father. In such instances, where SSA has determined that the ICWA may apply but no tribe has been identified, "notice of the proceedings to the Bureau of Indian Affairs and further inquiry regarding the possible Indian status of the child are the only requirements." (Cal. Rules of Court, rule 1439(e).) This inquiry obligation exists in every dependency case: "The court and the county welfare department have an affirmative duty to inquire whether a child for whom a petition under [Welfare & Institutions Code] section 300 is to be, or has been, filed is or may be an Indian child." (Cal. Rules of Court, rule 1439(d).) Before determining whether this inquiry obligation was satisfied, we examine the broader question of whether violation of ICWA's notice provision constitutes jurisdictional error.

B. Violation of ICWA's Notice Provision Does Not Constitute Jurisdictional Error
SSA contends the juvenile court's encroachment on section 1912(a)'s 10-day window was harmless. Father insists the error was not harmless but rather jurisdictional, and isolated language in a few cases supports his position. For example, Desiree F., supra, 83 Cal.App.4th at p. 474, 99 Cal.Rptr.2d 688, states in passing that "state courts have no jurisdiction to proceed with dependency proceedings involving a possible Indian child until a period of at least 10 days after the receipt of . . . notice." (See also In re Jonathan D. (2001) 92 Cal.App.4th 105, 110, 111 Cal. Rptr.2d 628 (Jonathan D.) [same, quoting Desiree F.]; In re Samuel P. (2002) 99 Cal.App.4th 1259, 1267, 121 Cal.Rptr.2d 820 (Samuel P.) [same, citing Desiree F. and Jonathan D.]. At least one out-of-state court has taken a similar view. In Matter of N.A.H. (S.D.1988) 418 N.W.2d 310, 311 (N.A.H.), the South Dakota Supreme Court declared inadequate notice under *23 the ICWA "divests the trial court of jurisdiction to terminate parental rights." No party raised the notice issue, but the court in a per curiam opinion reached it because "this court must examine jurisdictional questions whether presented by the parties or not." (Ibid.) In reversing and remanding because inadequate notice divested the trial court of jurisdiction, the N.A.H. court added, "consequently, this court has no jurisdiction to address the merits of the case." (Ibid.)
But as another court has observed, "There is a wide difference between a want of jurisdiction, in which case the court has no power to adjudicate at all, and a mistake in the exercise of undoubted jurisdiction, in which case the action of the trial court is not void, although it may be subject to direct attack on appeal." (Altman v. Nelson (1992) 197 Mich.App. 467, 495 N.W.2d 826, 829 [trial court had jurisdiction to rule on paternity action, notwithstanding that ruling proved erroneous].) The juvenile court undoubtedly had subject matter jurisdiction over these dependency proceedings. (Cal. Const., art. VI, § 10 ["Superior courts have original jurisdiction in all causes except those given by statute to other trial courts"]; Welf. & Inst.Code, §§ 245 [superior court known as "juvenile court" when exercising jurisdiction conferred by Ch. 2 of Arnold-Kennick Juvenile Court Law], 300 [delineating dependency jurisdiction of the juvenile court]. Compare 25 U.S.C. § 1911(b) & (c) [recognizing state court jurisdiction over foster care placement and termination of parental rights proceedings], with 25 U.S.C. § 1911(a) [vesting exclusive jurisdiction in tribal courts over proceedings involving an Indian child "who resides or is domiciled within the reservation of such tribe . . ."].)
We do not believe the respective "no jurisdiction" statements in Desiree F., Jonathan D., or Samuel P. were intended as novel pronouncements on the dependency jurisdiction of state courts. Rather, the use of the word "jurisdiction" appears to have been simply a shorthand way of saying the ICWA violations under consideration in those cases constituted serious legal error. Indeed, the statements regarding "no jurisdiction" are only dicta. In each case, the reviewing court reversed or remanded because the lack of notice was prejudicial errorany additional language regarding "jurisdiction" was mere surplusage. (See Desiree F., supra, 83 Cal. App.4th at p. 474, 99 Cal.Rptr.2d 688; Jonathan D., supra, 92 Cal.App.4th at p. 110, 111 Cal.Rptr.2d 628; Samuel P., supra, 99 Cal.App.4th at p. 1267, 121 Cal. Rptr.2d 820.) Nevertheless, these cases and N.A.H. are being relied upon for the proposition that notice violations of the ICWA are jurisdictional. (See, e.g., In Interest of JW. (Iowa Ct.App.1993) 498 N.W.2d 417, 419 [citing N.A.H.]; Annot, Construction and Application of Indian Child Welfare Act of 1978 (ICWA) (§ 1901 et seq.) Upon Child Custody Determinations (2001) 89 A.L.R.5th 195 (2003 supp.) § 8[a] [citing Samuel P.].) To the extent Desiree F., Jonathan D., Samuel P., or N.A.H. can be interpreted to mean a trial court or the reviewing court lacks subject matter jurisdiction in the face of erroneous notice, we disagree.
We hold that violation of the 10day period of notice required by ICWA is not jurisdictional error. The very fact that notice problems are sometimes deemed harmless in ICWA cases (see, e.g., In re Kahlen W. (1991) 233 Cal.App.3d 1414, 1424, 285 Cal.Rptr. 507) indicates such error is not jurisdictional. To the contrary, a finding of jurisdictional error would logically precede and preclude any inquiry as to whether the error was harmless. And if error were to strip a court of its jurisdiction *24 (a dramatic proposition for which there is no precedent in other areas of the law), then the juvenile court would lose all authority over the dependent child in its care, requiring immediate return of the child to parents who have demonstrated at least temporary unfitness. The Vermont Supreme Court prudently rejected this notion in In re M.C.P., supra, 571 A.2d at p. 635, as we do here. (Cf. In re Riva M. (1991) 235 Cal.App.3d 403, 412, 286 Cal. Rptr. 592 [rejecting notion that substantive standard of proof requirements of ICWA "involve[ ] the fundamental jurisdiction of the court to act"].)
Most importantly, Congress has recognized state court jurisdiction over foster care placement and termination of parental rights proceedings (25 U.S.C. § 1911(b) & (c)), and the remedy Congress provided for violations of the ICWA was not to void that jurisdiction and transfer the matter to tribal courts but rather to allow parents and tribes to seek invalidation of any proceedings held in error. (25 U.S.C. § 1914; see Carson v. Carson (2000) 170 Or.App. 263, 13 P.3d 523, 525-526, fn. 5 [criticizing N.A.H. on grounds that Congress intended states courts to enforce ICWA's notice rules only on the presupposition that they "otherwise had jurisdiction"].) We agree with the conclusion that "[i]f a state court, as opposed to a tribal court, properly has jurisdiction over the subject matter, the court is not divested of jurisdiction simply because it fails to comply with the [A]ct." (State ex rel. Juv. Dept. v. Charles (1984) 70 Or.App. 10, 688 P.2d 1354, 1360, fn. 5 [noting Congress "specifically" acknowledged state court jurisdiction in 25 U.S.C. § 1911].) For all these reasons, we hold a court's failure to comply with the notice provisions of the ICWA is not jurisdictional error.

C. Violation of 10-Day Window of Notice to the Secretary Is Harmless Error
Even though the failure to comply with section 1912(a) was not jurisdictional, the question remains whether it was prejudicial or harmless. Deficient notice under the ICWA is usually prejudicial (see, e.g., In re Kahlen, supra, 233 Cal. App.3d at p. 1424, 285 Cal.Rptr. 507) but not invariably so. (In re Junious M. (1983) 144 Cal.App.3d 786, 794, 193 Cal. Rptr. 40, fn. 8 ["Lack of notice is not necessarily prejudicial to the tribe, even where it is required," citing Matter of S.Z. (S.D.1982) 325 N.W.2d 53, 55].) We note and agree with the concluding sentiments recently expressed with some frustration by the Fifth Appellate District that "this court has published repeatedly to emphasize the importance of ICWA notice compliance" and that, when failing to assure compliance, SSA and the juvenile courts "face the strong likelihood of reversal on appeal to this court." (In re H. A. (2002) 103 Cal.App.4th 1206, 1214, 128 Cal. Rptr.2d 12.) But this case is the rare one where inadequate notice was harmless.
Our harmless error analysis turns on evidence SSA moves to introduce for the first time on appeal, namely the BIA's response to SSA's notice sent the day before the termination hearing. Father does not oppose the motion. We previously observed in In re Jonathan M. (1997) 53 Cal.App.4th 1234, 1236, fn. 2, 62 Cal. Rptr.2d 208, that "[t]his court routinely accepts evidence per Code of Civil Procedure section 909 in juvenile dependency cases to expedite just and final resolution for the benefit of the children involved." (See Cal. Const., art. VI, § 11 [authorizing the taking of such evidence]; Code Civ. Proc., § 909; Cal. Rules of Court, rule 23(b); In re Elise K. (1982) 33 Cal.3d 138, 149-151, 187 Cal.Rptr. 483, 654 P.2d 253 *25 (cone. opn. of Bird, C.J.); In re Junious M., supra, 144 Cal.App.3d at p. 797 & fn. 9,193 Cal.Rptr. 40.)
Code of Civil Procedure section 909 provides by its terms that it is to be "liberally construed," but there are limits on when SSA may invoke it, as shown by our recent opinion in In re Jennifer A. (2002) 103 Cal.App.4th 692, 127 Cal.Rptr.2d 54 (Jennifer A.). There, SSA sought to introduce on appeal the negative response of one tribe and the lack of response of another as evidence that Jennifer A. was not an Indian child. (Id. at p. 705, 127 Cal.Rptr.2d 54.) SSA, however, had not bothered to ask the parents (both of whom were participating in the dependency proceedings) their birthplaces or that of their daughterinformation highly relevant to tracing tribal membership. (Ibid.) For us to have accepted SSA's new evidence in such circumstances would have been unjust. In this case, in contrast, SSA queried father regarding his grandparents' alleged Indian ancestry and identifying information such as their names, birth dates, and tribal affiliations. Jennifer A. is therefore inapposite. We also note here that, in terminating parental rights, the juvenile court found Antoinette was adoptable, and the record shows prospective adoptive parents have been located for her. In view of these circumstances and the fact that our concerns in Jennifer A. do not apply, a just and final resolution for Antoinette compels us to accept SSA's new evidence.[3]
The substance of SSA's new evidence is simply that no Indian heritage could be traced for Antoinette by either the BIA or DSS. SSA sought to introduce similar responses in Jennifer A., albeit from a tribe, which we refused. But as we have discussed, the tribe's response in Jennifer A. was premised on the inadequate information SSA had provided the tribe, lacking birthplaces for either parent or Jennifer even though all were participating in the proceedings. (Jennifer A, supra, 103 Cal.App.4th at p. 705, 127 Cal. Rptr.2d 54.) Here, SSA confirmed with mother that she had no Indian heritage and inquired of father regarding the birth dates and tribal affiliation of his grandparents. In so doing, SSA satisfied the inquiry obligation imposed by California Rules of Court, rule 1439(d) and (e). We note that the obligation is only one of inquiry and not an absolute duty to ascertain or refute Native American ancestry. Father points to nothing more SSA might have done or any further information he or any other person might have regarding his alleged *26 Indian ancestry. Reversal or remand here would exalt form over substance because it is apparent father cannot provide any more information. Under the standard of Chapman v. California (1967) 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 or People v. Watson (1956) 46 Cal.2d 818, 299 P.2d 243, the notice violation here was harmless.

D. Juvenile Court Not Required to Apply Substantive Provisions of ICWA in This Case
Finally, father argues that because the juvenile court had reason to believe Antoinette might be an Indian child, based on the information father provided to SSA, the court should have applied the substantive provisions of ICWA, including the "beyond reasonable doubt" standard necessary to terminate parental rights. (25 U.S.C. § 1912(f); Cal. Rules of Court, rule 1439(e) ["court shall proceed as if the child is an Indian child" if it "has reason to know" child might be Native American].)
We recently suggested juvenile courts should make an explicit rather than implicit determination as to the applicability of the ICWA. (Jennifer A, supra, 103 Cal.App.4th at p. 705, 127 Cal.Rptr.2d 54.) In disagreeing with In re Levi U. (2000) 78 Cal.App.4th 191, 199, 92 Cal.Rptr.2d 648, which appeared to allow implicit rulings, we stated, "The point of the matter is the court must decide, one way or the other, whether the ICWA applies, so it can proceed in compliance therewith when appropriate." (Jennifer A, supra, 103 Cal. App.4th at p. 705, fn. 5, 127 Cal.Rptr.2d 54.) We strongly affirm that juvenile courts should abide by their obligation to determine in the first instance whether the ICWA applies. The court here made no such determination, whether explicit or implicit, and therefore erred. But given the BIA's response showing no Indian heritage could be traced for Antoinette, the ICWA clearly did not apply to these proceedings and the court's error was harmless. We therefore affirm the judgment.[4]

*27 IV

Disposition
The judgment of the juvenile court is affirmed. Failure to abide by the 10-day notice requirement of the Indian Child Welfare Act is not jurisdictional error and, indeed, constitutes only harmless error in this case.
I CONCUR: FYBEL, J.
MOORE, J., dissenting:
The juvenile court was put on notice that Antoinette "[might] be of Indian ancestry," when the dependency petition containing that statement was filed. Subsequently, the father appeared on the scene and said his maternal grandparents had Indian ancestry. In an addendum report filed the day of the termination hearing, Orange County Social Services Agency (SSA) informed the court of the father's claimed Indian heritage. The report also reflected that just one day before the termination hearing, SSA had sent correspondence regarding Antoinette's possible Indian ancestry. The court accepted the report into evidence. Inexplicably, the court chose to ignore the information concerning the possible Indian heritage of Antoinette. The court made no findings as to the applicability of the Indian Child Welfare Act (ICWA) and failed to ensure compliance with the ICWA notice requirements.
Having been informed about Antoinette's possible Indian heritage twice, the court certainly was on notice that she might be an Indian Child. (Dwayne P. v. Superior Court (2002) 103 Cal.App.4th 247, 255, 126 Cal.Rptr.2d 639 (Dwayne P.) [court has reason to believe child is Indian when public or state-licensed agency in volved in child protection services has obtained information so suggesting].) As to this much, my colleagues agree. (Maj. opn., ante, at p. 21.) "When the court has reason to know Indian children are involved in dependency proceedings, as here, it has the duty to give the requisite notice itself or ensure the social services agency's compliance with the notice requirement. [Citations.] In our view, the court's duty is sua sponte. . .. [Citation.]" (Dwayne P., supra, 103 Cal.App.4th at p. 261, 126 Cal.Rptr.2d 639.)
As the majority opinion acknowledges (maj. opn., ante, at p. 20), Title 25 United States Code section 1912(a) provides as follows: "In any involuntary proceeding in a State court, where the court knows or has reason to know that an Indian child is involved, the party seeking the . . . termination of parental rights to, an Indian child shall notify the parent or Indian custodian and the Indian child's tribe, . . . of the pending proceedings and of their right of intervention. If the identity or location of the parent or Indian custodian and the tribe cannot be determined, such notice shall be given to the Secretary in like manner. . . . No . . . termination of parental rights proceeding shall be held until at least ten days after receipt of notice by the parent or Indian custodian and the tribe or the Secretary. . .." In an instance such as this, then, the notice that would otherwise be given to the tribe must be given to the Secretary of the Interior, since the tribe is not known. (25 U.S.C. § 1912(a); In re H.A. (2002) 103 Cal.App.4th 1206, 1211, 128 Cal.Rptr.2d 12; In re Kahlen W. (1991) 233 Cal.App.3d 1414, 1422, 285 Cal. Rptr. 507 (Kahlen W.).). The prescribed *28 notice must pertain to the pending proceedings and the right of intervention.
"The Guidelines for State Courts; Indian Child Custody Proceedings (hereafter Guidelines) (44 Fed.Reg. 67584-67595 (Nov. 26, 1979)) promulgated under the statute for aid in interpreting its provisions identify in some detail the responsibilities inuring to the Secretary under the notice provisions of [Title 25 United States Code] section 1912. First, . . . the Guidelines provide notice to the Secretary should include the following information: [¶] (1) Name of Indian child, birthdate, birthplace, [¶] (2) Indian child's tribal affiliation, [¶] (3) Names of Indian child's parents or Indian custodians, including birthdate, birthplace, and mother's maiden name, and [¶] (4) A copy of the petition, complaint or other document by which the proceeding was initiated. (25 C.F.R. § 23.11.)" (Kahlen W., supra, 233 Cal. App.3d at pp. 1422-1423, 285 Cal.Rptr. 507, fn. omitted.)
In addition, the notice to the BIA shall include statements: (1) regarding the right of the Indian parents, Indian custodians and tribe to intervene in the proceedings; (2) to the effect that counsel will be appointed for Indian parents or Indian custodians who are indigent; (3) regarding the right of the Indian parents, Indian custodians and tribe to obtain an additional 20 days to prepare for the proceedings; (4) providing the location, address and telephone number of the court; (5) regarding the right of the Indian parents, Indian custodians and tribe to petition the court for a transfer of the proceedings to a tribal court; (6) regarding the potential legal consequences of an adjudication on future parental and custodial rights; and (7) to the effect that the recipients of the notice must keep all information contained therein confidential. (25 C.F.R. § 23.11(e); In re H. A, supra, 103 Cal.App.4th at p. 1212, 128 Cal.Rptr.2d 12.)
In this case, as the father points out in his opening brief, there was no evidence before the juvenile court that SSA had provided the required information. SSA said in its addendum report that it had "submitted letters" to the BIA and the State Department of Social Services "regarding the possibility of Indian ancestry within Antoinette's birth family." The father argues there is no proof the content of these letters provided the requisite information concerning the proceedings and the right of intervention. He is right.
My colleagues impliedly acknowledge that the record before the juvenile court was inadequate to determine whether the ICWA notice provisions had been followed. (Maj. opn., ante, at p. 24.) Rather than remand the case for a determination of the pertinent factual issues, they choose to take additional evidence on appeal. We declined to follow this course of action in In re Jennifer A. (2002) 103 Cal.App.4th 692, 703, 127 Cal.Rptr.2d 54 (Jennifer A), where we stated that "[m]aking the appellate court the trier of fact is not the solution." We further explained: "[I]t is up to the juvenile court to review the information concerning the notice given, the timing of the notice, and the response of the tribe, so that it may make a determination as to the applicability of the ICWA, and thereafter comply with all of its provisions, if applicable." (Id, at p. 705, 127 Cal. Rptr.2d 54.) In my view, that statement remains correct. "[T]he Guidelines provide that a juvenile court has an affirmative duty to inquire about a child's Indian status. [Citation.]" (Kahlen W., supra, 233 Cal.App.3d at p. 1425, 285 Cal. Rptr. 507.) "The juvenile court's failure to secure compliance with the notice provisions of the Act is prejudicial error." (Id. at p. 1424, 285 Cal.Rptr. 507.)
*29 In at least five opinions published in the last two months, appellate courts have admonished juvenile courts and social services agencies for giving the ICWA notice provisions short shrift. (See In re Suzanna L. (2002) 104 Cal.App.4th 223, 127 Cal. Rptr.2d 860 [order terminating parental rights reversed when no notice was given to BIA and trial court was not provided with copies of notices, return receipts or responses from tribes]; In re H. A., supra, 103 Cal.App.4th 1206, 128 Cal.Rptr.2d 12 [party seeking termination of parental rights or foster care placement of possible Indian child must serve proper notice, with copy of dependency petition, and file with superior court copies of proof of registered or certified mail plus return receipts, notices served, and any responses received]; In re Jeffrey A. (2002) 103 Cal.App.4th 1103, 127 Cal.Rptr.2d 314 (Jeffrey A) [order terminating parental rights vacated when record failed to show whether notice given complied with ICWA's requirements and was sent to Secretary of Interior and BIA Area Director]; Jennifer A., supra, 103 Cal.App.4th 692, 127 Cal.Rptr.2d 54 [no evidence regarding notice, receipt of notice, or any responses from tribes or BIA provided to juvenile court, which erred in failing to determine whether notice given in compliance with ICWA]; Dwayne P., supra, 103 Cal.App.4th 247, 126 Cal.Rptr.2d 639 [court has sua sponte obligation to ensure compliance with notice requirements even when parents make vague statements that they may have Cherokee Indian heritage but provide no evidentiary showing].) In each of those cases, either the matter was remanded for, or writ petitions were granted directing, further proceedings in compliance with the ICWA.
As the majority indicates (maj. opn., ante, at p. 26), the juvenile court should have made a determination as to whether the ICWA applies, but it did not do so. While the majority does not hesitate to make that determination on appeal, I view the issue as one best left for the juvenile court to resolve. (Jennifer A, supra, 103 Cal.App.4th at p. 705, 127 Cal.Rptr.2d 54.) The matter should be remanded for that determination.
That aside, once the majority has taken SSA's evidence on appeal, it turns out what was given was no notice at allonly a request for information with respect to Antoinette. What SSA sent the BIA was a form entitled "Request for Confirmation of Child's Status as Indian." It provided no information whatsoever regarding the pending proceedings.
As observed in In re Samuel P. (2002) 99 Cal.App.4th 1259, 121 Cal.Rptr.2d 820, the request for confirmation form provides no court case number or other information with respect to the dependency proceedings, no notice of any hearings and no information regarding the tribe's right to intervene. (Id. at p. 1266, 121 Cal.Rptr.2d 820.) The deficiency of this form for use in lieu of a notice was discussed further in both Jeffrey A., supra, 103 Cal.App.4th 1103, 127 Cal.Rptr.2d 314 and In re H. A, supra, 103 Cal.App.4th 1206, 128 Cal. Rptr.2d 12. As stated in Jeffrey A., supra, 103 Cal.App.4th 1103, 127 Cal.Rptr.2d 314, "Two forms have been issued by the State of California Health and Welfare Agency and the Department of Social Services to comply with the ICWA. They are entitled 'Request for Confirmation of Child's Status as Indian' (form `SOC 318') and `Notice of Involuntary Child Custody Proceedings Involving an Indian Child' (form `SOC 319'). Only the latter form contains notice of the proceedings and of the right to intervene." (Id. at p. 1108, 127 Cal. Rptr.2d 314.)
In re H. A, supra, 103 Cal.App.4th 1206, 128 Cal.Rptr.2d 12, in agreement, *30 rejected the use of a request for confirmation form (SOC 318) for the provision of notice and distinguished that form from the standard notice form (SOC 319). "The request for confirmation . . . is another form promulgated by the State of California, Health and Welfare Agency. However, it serves a purpose other than notice. The request for confirmation includes blanks for detailing the dependent child's family history as an aid to a tribe in determining whether the particular dependent child qualifies for Indian child status." (Id. at p. 1212, 128 Cal.Rptr.2d 12.) The court in In re H.A., supra, 103 Cal.App.4th at p. 1211, 128 Cal.Rptr.2d 12 further stated that compliance with the ICWA notice requirements necessitates only completion of form SOC 319 and the attachment of a copy of the dependency petition. Form SOC 319 is intended to satisfy the Guidelines notice requirements. (Ibid)
The record of the juvenile court proceedings in the case before us and the additional evidence taken on appeal show a complete failure to give notice of the dependency proceedings. The BIA was not provided with a copy of the dependency petition, a court case number, a location and address for the juvenile court, or the other information required by 25 Code of Federal Regulations part 23.11(e). The majority opinion overlooks this issue. It implies the only problem was the court's failure to wait 10 days after the BIA's receipt of information from SSA before proceeding with the termination hearing. (Maj. opn., ante, at p. 22.) It omits to address whether the information SSA provided to the BIA was what was required under the ICWA.
Rather, my colleagues opine that "the purpose of notice to the Secretary is so that she may `provide the requisite notice to the parent or Indian custodian and the tribe.' ([25 U.S.C] § 1912(a).)" (Maj. opn., ante, at p. 26, fn. 4.) Yet other cases have explained more fully that "[t]he requisite notice to the tribe or BIA serves a twofold purpose. First, it enables the tribe or BIA to investigate and determine whether the minor is an `Indian child.' . . . [Citations.] Secondly, it advises the tribe or BIA of the proceedings and the tribe's right to exercise its jurisdiction in the matter or at least intervene in the proceedings. [Citations.]" (In re Pedro N. (1995) 35 Cal.App.4th 183, 186-187, 41 Cal.Rptr.2d 819, fn. omitted.) While the ultimate goal of notice to the tribe is the same under either characterization, we cannot be certain that the BIA's response to SSA in this case would have been identical if it had been notified of the dependency proceedings.
The majority opinion observes that "where SSA has determined that the ICWA may apply but no tribe has been identified, `notice of the proceedings to the Bureau of Indian Affairs and further inquiry regarding the possible Indian status of the child are the only requirements.' (Cal. Rules of Court, rule 1439(e).)" (Maj. opn., ante, at p. 22.) But when analyzing California Rules of Court, rule 1439(e), the majority opinion addresses only the requirement regarding further inquiry and omits to discuss the requirement of notice of the proceedings. The type of notice required is key. The majority says that "SSA sent notice regarding Antoinette's possible Indian heritage to the appropriate regional Bureau of Indian Affairs (BIA) office . . . the day before the termination hearing." (Maj. opn., ante, at p. 19.) Notice of Antoinette's possible Indian heritage was not what was required. Notice of the dependency proceedings was required, per both California Rules of Court, rule 1439(e) and Title 25 United States Code section 1912(a).
*31 My colleagues overlook this failing, apparently because of the minimal information available about Antoinette's possible Indian heritage and the BIA's tepid response to the request for confirmation form. While it is tempting to toss aside the application of the ICWA because of the father's failure to provide information one might expect him to know, it is improper to do so. As stated in Dwayne P., supra, 103 Cal.App.4th at p. 258, 126 Cal.Rptr.2d 639, "The Agency complains that the parents made no evidentiary showing. The Agency notes parents can `contact their family and any tribe they think they may have heritage with, and seek to obtain further evidence of their Indian ancestry that would show their child is or may be an Indian child,' `take steps to become enrolled members themselves, or to enroll their children, if they truly have Indian heritage and are eligible' and `bring that new information to the court and seek to modify the previous orders, require notice to the tribe, and compel the application of the ICWA.' The ICWA, however, is designed to protect Indian children and tribes notwithstanding the parents' inaction. [Citations.]" (Italics added.) Notice of the dependency proceedings was required in this case irrespective of the fact the father had provided but a threadbare snippet of information concerning the Indian heritage of his child.
The majority gives an unintended, albeit risky mixed messagethat it is sometimes acceptable for juvenile courts to completely ignore indications that a child may be of Indian ancestry. I cannot agree. We must "liberally construe the ICWA for the benefit of Indians. [Citations.]" (In re Pedro N., supra, 35 Cal.App.4th at p. 190, 41 Cal.Rptr.2d 819.) Moreover, unless courts assure proper statutory notice is given to the BIA, adoptive parents of a child with Indian heritage will never be sure that a tribe claiming a violation of the ICWA notice provisions will not be knocking at their door in years to come. (25 U.S.C. § 1914 [tribe may petition to invalidate action on showing of violation of 25 U.S.C. § 1912]; In re Desiree F. (2000) 83 Cal.App.4th 460, 99 Cal.Rptr.2d 688 [trial court orders invalidated because notice not given in compliance with ICWA]; Cal. Rules of Court, rule 1439(n) [final decree of adoption may be set aside].) In my opinion, the judgment should be reversed and the matter remanded for the juvenile court to ensure that notice is given in compliance with the ICWA.
NOTES
[1] The BIA's form response here listed "Insufficient identifying tribal information" as the reason it was returning SSA's notice without any action. While this might suggest notices sent to the BIA without tribal information are empty gestures, the BIA's inability to take action or provide information should not be interpreted as countermanding section 1912(a)'s requirement that notice be given to the Secretary when a tribe cannot be identified. The statute controls. Moreover, in the computer age it is not inconceivable the BIA would keep a list of tribal members and their descendants so that similar inquiries might be fruitful.
[2] The BIA's response to SSA's notice included a statement that "[p]roof of biological descendance is required for establishing eligibility for membership in a tribe." While true enough for our purposes, the BIA overstates the matter, considering that "[n]early all tribal constitutions provide for adoption through special action by the tribe, subject to review by the Secretary of the Interior." (Cohen, Handbook of Federal Indian Law (1942) p. 136.)
[3] The new evidence consists of the notices SSA sent to the BIA and DSS and the responses from those agencies. The BIA sent its form-letter response to SSA just three days after SSA sent notice. The response contained a checked box stating, "Alleged paternity of the Indian father is unacceptable for tribal membership. Proof of biological descendance is required for establishing eligibility for membership in a tribe." Another checked box read: "Insufficient identifying tribal information. It is important in most cases to be able to trace back to 1900 with names, birth dates and/or birthplaces of ancestors to help in establishing a biological link with the original ancestral tribal member(s)." The letter's concluding paragraph noted, "We depend on the family to help us with their tribal heritage background so as to know which federally recognized tribe and/or rancheria to notify."

DSS's response was similar: "Unfortunately, the informant did not know the child's claimed tribal affiliation. Unless tribal affiliation is known, there is no way to determine whether or not the child possesses Indian ancestry for purposes of the ICWA. Additionally, without this information, we cannot request a certificate of degree of Indian Blood (CDIB). Therefore, we are returning the ICWA referral to you. If you obtain further information regarding the possible Indian ancestry of this child, we will be glad to assist you."
[4] The dissent correctly notes "[t]he BIA was not provided with a copy of the dependency petition, a court case number, a location and address for the juvenile court, or the other information required by 25 Code of Federal Regulations part 23.11(e)." These requirements effectuate section 1912's mandate that "the party seeking the foster care placement of, or termination of parental rights to, an Indian child shall notify the parent or Indian custodian and the Indian child's tribe . . . of the pending proceedings and of their right of intervention." The purpose of giving notice is not ritual adherence to the statute but to make it possible for Indian parents, custodians, and tribes to exercise their right of intervention guaranteed by the ICWA. (25 U.S.C. § 1911(c).)

ICWA does not provide for intervention by the BIA; rather, the purpose of notice to the Secretary is so that she may "provide the requisite notice to the parent or Indian custodian and the tribe." (25 U.S.C. § 1912(a).) Father recognized as much when he raised the issue (however obliquely) in the context of lack of notice to the tribe, not the BIA. He stated in his opening brief that, "if notice was sent, there is no proof that the contents of the notice informed the tribe of the proceedings and of their right to intervene." (Italics added.) But no tribe could possibly have been identified with the information father provided. And unlike in Jennifer A., SSA satisfied its inquiry obligation in this case. Given this scenario, SSA's failure to provide information the BIA could not utilize is harmless error. The dissent offers no explanation why the error is not harmless. None of the cases cited by the dissent stand for the proposition that violation of ICWA's notice requirements constitutes per se reversible error.
Although we disagree with the dissent's apparent assumption that notice failings are always prejudicial and never harmless (see Cal. Const, art. VI, § 13), we share our dissenting colleague's concern that SSA fully satisfy ICWA's notice requirements. In light of our holding, SSA will surely raise the issue of harmless error in every ICWA appeal hereafter, just as the Attorney General does in virtually every criminal appeal. But we are confident meritless claims can be identified and rejected, as we did unanimously in Jennifer A. The length of this opinion and the existence of a dissent should put SSA on notice that claims of harmless error will be scrutinized closely and accepted rarely. But SSA undoubtedly has both the right and obligation to raise the issue of harmless error where, as here, there is reason to do so. A child's future may depend on it.