Filed 7/15/15  In re Ezra C. CA2/5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| In re EZRA C., a Person Coming Under the Juvenile Court Law. | B260439<br>(Los Angeles County Super. Ct.<br> No. CK94456) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>        Plaintiff and Respondent,<br><br>    v.<br><br>SANDRA C.,<br><br>        Defendant and Appellant. | |

APPEAL from an order of the Superior Court of the County of Los Angeles, Steff R. Padilla, Commissioner.  Affirmed in part and reversed in part.

William Hook, under appointment by the Court of Appeal, for Defendant and Appellant.

Mark J. Saladino, County Counsel, Dawyn R. Harrison, Assistant County Counsel, Navid Nakhjavani, Deputy County Counsel, for Plaintiff and Respondent.

_____

Sandra C. (mother) appeals from the order terminating her parental rights over her child, Ezra C.  Mother contends that the dependency court and the Los Angeles County Department of Children and Family Services (Department) failed to comply with the notice provisions of the Indian Child Welfare Act (ICWA).  (25 U.S.C. § 1901 et seq.)  At issue is whether the court erred in finding the ICWA did not apply, where mother indicated on various occasions that Ezra might have Apache ancestry from his maternal grandfather, but maternal grandmother indicated that to her knowledge no such ancestry existed.  We conclude that because mother's statements constituted a suggestion that the child might be an Indian child, the ICWA's notice provisions were triggered, and the court erred in finding that the ICWA did not apply.

## FACTUAL AND PROCEDURAL BACKGROUND

Mother had previously been diagnosed with bipolar disorder and had a history of substance abuse and violent behavior.  In a 2002 dependency proceeding in Kern County, resulting in mother losing custody over Ezra's older half-sibling, Elijah C., a report prepared by Kern County Child Protective Services stated, "[Mother] is of no known American Indian heritage."

Three-month-old Ezra first came to the Department's attention on December 14, 2012, after stating mother had a psychotic episode at a health clinic while Ezra was with her.  During a December 15, 2012 interview with a social worker, mother indicated she had Apache ancestry from the maternal grandfather, but she was not a registered member of the tribe, and the maternal grandfather had passed away.  On December 19, 2012, the Department filed a petition under Welfare and Institutions Code section 300,[1] which was later amended on January 28, 2012, to include further allegations regarding mother's mental instability.  Both petitions indicated that the child might have Indian ancestry.

---

[1] All statutory references are to the Welfare and Institutions Code, unless otherwise indicated.

2

On December 19, 2012, the court ordered Ezra detained with maternal grandparents. On December 27, 2012, mother was arrested and transferred to Santa Barbara County for violating the terms of her probation related to multiple counts, including battery, assault, and use of tear gas.

On March 11, 2013, mother filed an ICWA-020 Parental Notification of Indian Status, indicating possible Apache ancestry through maternal grandfather. The minute order for a pretrial resolution conference held that day indicated that mother might have Apache heritage and directed the social worker to conduct further investigation of the claim.

In the intervening time, mother was ordered by the Santa Barbara Superior Court to enter a residential treatment program in place of incarceration for the December 27, 2012 arrest. Over the course of two months, mother was transferred to three different residential treatment programs and hospitals, where she exhibited paranoia and threatening behaviors and was diagnosed with schizoaffective disorder. Mother was discharged from two treatment programs due to lack of compliance and disruptive behavior.

On April 13, 2013, the social worker spoke with the maternal grandmother about Ezra's possible Indian status. The maternal grandmother stated that as far as she knew the maternal grandfather did not have Indian ancestry. She also stated that when mother was hospitalized "she wanted to join the Tribe Association to play drums and wanted to join for 'Religious Reasons.'" The maternal grandmother said she would attempt to determine Ezra's possible Indian heritage by contacting the only living uncle on the maternal grandfather's side of the family, and she would then provide that information to the social worker. No further information was received from maternal grandmother.

On April 24, 2013, at the combined jurisdictional and dispositional hearing, the court made a finding that the ICWA did not apply. Mother did not object, nor did she appeal the court's ICWA finding at that time. The later proceedings included a few references back to the court's ICWA decision on April 24, 2013, but no further ICWA finding.

3

Between July 2013 and October 2013, mother was incarcerated for outstanding warrants. On September 6, 2013, mother was found incompetent to stand trial and placed in a state hospital.

At a six-month review hearing on February 13, 2014, the court found mother was not in compliance with the case plan. It terminated her reunification services and scheduled a section 366.26 hearing to consider terminating mother's parental rights. Mother attempted to file a notice of intent to seek writ review of the court's order setting the section 366.26 hearing, but the notice was rejected as untimely.

At the section 366.26 hearing on September 18, 2014, the court terminated mother's parental rights and found Ezra adoptable by maternal grandmother. Mother appealed the order on November 6, 2014.

## DISCUSSION

**Standard of Review**

We review the court's ICWA finding for substantial evidence. (*In re K.B.* (2009) 173 Cal.App.4th 1275, 1283.) "In making this determination, we draw all reasonable inferences from the evidence to support the findings and orders of the dependency court; we review the record in the light most favorable to the court's determinations . . . ." (*In re Heather A.* (1996) 52 Cal.App.4th 183, 193.) "The judgment will be upheld if it is supported by substantial evidence, even though substantial evidence to the contrary also exists and the trial court might have reached a different result had it believed other evidence." (*In re Dakota H.* (2005) 132 Cal.App.4th 212, 228.)

The Bureau of Indian Affairs (Bureau) publishes guidelines to assist states in implementing the ICWA. The most recent guidelines state, "the Indian Child Welfare Act (ICWA) [should be] applied in all States consistent with the Act's express language, Congress' intent in enacting the statute, and the canon of construction that statutes enacted for the benefit of Indians are to be liberally construed to their benefit."

4

(Guidelines for State Courts and Agencies in Indian Child Custody Proceedings, 80 Fed.Reg. 10146, 10150 (Feb. 25, 2015) (Guidelines).) "Given the interests protected by the Act, the recommendations of the guidelines, and the requirements of our court rules, the bar is indeed very low to trigger ICWA notice." (*In re Antoinette S.* (2002) 104 Cal.App.4th 1401, 1408 (*Antoinette S.*).) Further, section 224 states that when "applicable state or federal law provides a higher standard of protection to the rights of the parent or Indian custodian of an Indian child," the higher standard should be applied. (§ 224, subd. (d).)

**Evidence to Trigger the ICWA's Notice Requirements**

The ICWA is meant to "protect the best interests of Indian children and to promote the stability and security of Indian tribes and families by the establishment of minimum Federal standards for the removal of Indian children" (25 U.S.C. § 1902) in response to the increasing concern for the "abusive child welfare practices that resulted in the separation of large numbers of Indian children from their families and tribes through adoption or foster care placement, usually in non-Indian homes" (*Mississippi Band of Choctaw Indians v. Holyfield* (1989) 490 U.S. 30, 32). Congress has made findings "that there is no resource that is more vital to the continued existence and integrity of Indian tribes than their children and that the United States has a direct interest, as trustee, in protecting Indian children . . . ." (25 U.S.C. § 1901(3).) An Indian child is defined as "any unmarried person who is under the age eighteen and is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe." (25 U.S.C. § 1903(4).)

Because "the tribes are in a better position than the parents, the agency, or the court to determine potential membership" (*In re J.T.* (1997) 166 Vt. 173, 182-83 [693 A.2d 283, 289]), the ICWA provides that "where the court knows or has reason to know that an Indian child is involved, the party seeking the foster care placement of, or termination of parental rights to, an Indian child shall notify the parent or Indian

5

custodian and the Indian child's tribe." (25 U.S.C. § 1912(a).) If the tribe is unknown, notice must be sent to the Secretary of the Interior. (25 U.S.C. § 1912(a); *Dwayne P. v. Superior Court* (2002) 103 Cal.App.4th 247, 253 (*Dwayne P.*).) "That the identity of the tribe is not known does not discharge [the Department] from the requirement of giving notice." (*Antoinette S.*, *supra*, 104 Cal.App.4th at p. 1406.) Section 224.2 reiterates that "[n]otice shall be sent whenever it is known or there is reason to know that an Indian child is involved, and for every hearing thereafter . . . unless it is determined that the Indian Child Welfare Act . . . does not apply to the case in accordance with [s]ection 224.3." (§ 224.2, subd. (b).)

Section 224.3 requires notice to the tribe when there is information provided by "[a] person having an interest in the child . . . *suggesting* the child is a member of a tribe or eligible for membership in a tribe or [that] one or more of the child's biological parents, grandparents, or great-grandparents are or were a member of a tribe." (§ 224.3, subd. (b)(1), italics added.) California Rules of Court, rule 5.481(a)(5)(A) also specifies that "[t]he circumstances that may provide reason to know the child is an Indian child include . . . . [¶] [t]he child or a person having an interest in the child, . . . informs or otherwise provides information *suggesting* that the child is an Indian child to the court [or] the county welfare agency . . . ." (Italics added.) "The determination of a child's Indian status is up to the tribe; therefore, the [dependency] court needs only a *suggestion* of Indian ancestry to trigger the notice requirement." (*In re Nikki R.* (2003) 106 Cal.App.4th 844, 848 (*Nikki R.*), italics added.)

Determining whether enough information has been provided to trigger the ICWA notice provisions requires a fact-sensitive analysis. As noted in *In re Pedro N.* (1995) 35 Cal.App.4th 183, 186, "[t]he requisite notice to the tribe or [Bureau] serves a twofold purpose. First, it enables the tribe or [Bureau] to investigate and determine whether the minor is an 'Indian child.' . . . [Citations.] Secondly, it advises the tribe or [Bureau] of the proceedings and the tribe's right to exercise its jurisdiction in the matter or at least intervene in the proceedings. [Citations.]" (Fn. omitted.) Given these purposes "'it is preferable to err on the side of giving notice and examining thoroughly whether the

6

juvenile is an Indian child.'" (*Dwayne P.*, *supra*, 103 Cal.App.4th at p. 257, citing *In re M.C.P.* (1989) 153 Vt. 275, 289 [571 A.2d 627, 634-635].)

The information required to trigger the ICWA notice provisions is minimal in comparison to the showing required "to establish a child is an Indian child within the meaning of ICWA." (*In re Miguel E.* (2004) 120 Cal.App.4th 521, 549; see also *Dwayne P.*, *supra*, 103 Cal.App.4th at p. 258 [the party initiating the dependency proceeding must "distinguish between a showing that may establish a child is an Indian child within the meaning of the ICWA and the minimal showing required to trigger the statutory notice provisions"].) While eligibility to enroll and enrollment are central to a finding that the child is an Indian child within the meaning of the ICWA, a lack of such information does not waive the court's affirmative duty to provide notice when the court knows or has reason to know that an Indian child is involved. (§ 224.3; Cal. Rules of Court, rule 5.481(a)(5)(A).)

Cases in which courts have found insufficient information to trigger the ICWA's notice requirements have dealt with statements of Indian ancestry where no particular tribe was identified and no specific family member from whom the ancestry followed was singled out. In *In re J.D.* (2010) 189 Cal.App.4th 118, the court held that because the maternal grandmother was unable to specify the tribe or the relative from whom the ancestry followed and because there were no living relatives who could be interviewed, the information provided was not sufficient to trigger the ICWA's notice provisions. The information provided by the paternal grandmother was "too vague, attenuated and speculative to give the dependency court any reason to believe the children might be Indian children." (*Id.* at p. 125.)

In *In re Jeremiah G.* (2009) 172 Cal.App.4th 1514, the court held that the father's statement that he might have Indian ancestry was insufficient to determine whether the child might be an Indian child. Father asserted he might have Indian ancestry because his great grandfather was Indian, but he was unable to identify a specific tribe. Father filed an ICWA-020 indicating that he might have Indian ancestry, but a few weeks later he submitted a second ICWA-020 indicating that he did not have any Indian ancestry. At the

7

combined jurisdictional and dispositional hearing, father's counsel clarified that father had retracted his statement that he might have Indian ancestry, at which point all parties agreed the ICWA did not apply. (*Id.* at pp. 1518-1519.) The appellate court held that the information provided by father was insufficient to trigger the ICWA's notice requirements because it was too vague and speculative and because the statement was retracted. (*Id.* at p. 1516.) "In a juvenile dependency proceeding, a claim that a parent, and thus the child, 'may' have Native American heritage is insufficient to trigger ICWA notice requirements if the claim is not accompanied by other information that would reasonably suggest the minor has Indian ancestry." (*Ibid.*)

In *In re O.K.* (2003) 106 Cal.App.4th 152, the court also held that information was insufficient to indicate that the child was an Indian child within the meaning of the ICWA. The paternal grandmother could not identify a tribe, and merely stated the child could have Indian ancestry because "where were [*sic*] from it is that section" and she did not know whether she was eligible for membership. (*Id.* at p. 155.) The appellant court agreed that the information provided by the paternal grandmother was "insufficient to give the court reason to believe that the minors might be Indian children . . . [because it] was not based on any known Indian ancestors but on the nebulous assertion that 'where were [*sic*] from is that section . . . .'" (*Id.* at 157.)

In contrast to the cases discussed above, a suggestion that a child may have Indian ancestry identifying a specific tribe, or a family member from whom the ancestry follows, or both, is sufficient to trigger the ICWA's notice provisions. For instance, in *In re Damian C.* (2009) 178 Cal.App.4th 192, 195-196 (*Damian C.*), the mother submitted an ICWA-020 indicating that she may have Pasqua Yaqui ancestry from the maternal grandfather, who could not confirm his Indian ancestry due to lack of information. The appellate court held that the information provided by mother was sufficient to trigger the ICWA's notice provisions. "The [Department] was required to provide notice to the federally recognized Navajo and Yaqui tribes because, even though [maternal grandfather] reported the family had been unsuccessful in establishing the family's Indian

8

heritage, the question of membership in the tribe rests with the tribe itself." (*Id.* at p. 199, citing *In re Desiree F.* (2000) 83 Cal.App.4th 460, 471 (*Desiree F.*).)

In *In re Alice M.* (2008) 161 Cal.App.4th 1189 (*Alice M.*), the court held that notice was required after the mother submitted an ICWA-020 indicating that the child may be eligible for membership in an Apache or Navajo tribe. The appellate court held that the information provided on the ICWA-020 "gave the court reason to know [the child] *may be* an Indian child . . . The ambiguity in the form and the omission of more detailed information, such as specific tribal affiliation or tribal roll number, do not negate appellant's stated belief that [the child] may be a member of a tribe or eligible for membership." (*Id.* at p. 1198.)

In *Antoinette S.*, *supra*, 104 Cal.App.4th 1401, the mother first claimed that neither she nor the father had Indian heritage, at which point the dependency court held that the ICWA did not apply. Father later told the social worker that he may have Indian ancestry from his maternal grandparents, but was unable to provide a specific tribe or specific information about his maternal grandparents. On appeal, the father argued that the ICWA's notice requirements were triggered by his statement and that the notice sent by the Department was insufficient to meet those requirements. (*Id.* at pp. 1404-1405.) Applying the low threshold and minimal showing required to invoke the ICWA's notice requirements, the appellate court held that "father's suggestion that [the child] 'might' be an Indian child was enough to trigger notice in this case." (*Id.* at p. 1408; see also *Dwayne P.*, *supra*, 103 Cal.App.4th at pp. 257-258 [certainty not required to trigger ICWA notice requirements; facts suggesting the child may be Indian are sufficient].)

**Analysis**

Mother argues that the court and the Department had enough information to have reason to know that Ezra might be an Indian child and, therefore, the court should have ordered the Department to comply with the ICWA's notice requirements. The Department contends that the information was much too vague to trigger the ICWA

9

notice provisions. While the issue is close, we conclude mother has the better argument and there was enough of a suggestion to meet the minimal showing required to trigger the ICWA's notice provisions.

Mother informed the Department and the court that she had Apache heritage from the maternal grandfather, who was deceased. Mother filed an ICWA-020 Parental Notification of Indian Status indicating that she had "possible" Apache ancestry through the maternal grandfather and the court acknowledged in a minute order mother's assertion that "she may have Apache heritage." At the court's direction, the social worker contacted the maternal grandmother, who stated "that to her knowledge [maternal grandfather] did not have Native American Indian heritage in his family background." At the jurisdictional and dispositional hearing, held a month after the social worker interviewed the maternal grandmother, the court concluded without explanation that the ICWA did not apply. All of these occurrences transpired within the context of mother being repeatedly incarcerated or detained due to mental instability and violent behavior. There was also indication from a prior dependency proceeding involving mother's older son, Elijah, that mother had no known Indian ancestry.

Both California Rules of Court, rule 5.481(a)(5)(A) and section 224.3 indicate that the ICWA notice requirement is triggered when a person who has an interest in the child "provides information *suggesting* that the child" is an Indian child. (Italics added.) Mother provided both a specific tribe and a specific family member from whom the ancestry followed. "The Indian status of the child need not be certain to invoke the notice requirement." (*Desiree F.*, *supra*, 83 Cal.App.4th at p. 471.) "The determination of a child's Indian status is up to the tribe; therefore, the [dependency] court needs only a suggestion of Indian ancestry to trigger the notice requirement." (*Nikki R.*, *supra*, 106 Cal.App.4th at p. 848.)

Although the maternal grandmother in this case indicated that she did not think the paternal grandfather had Indian heritage, the information provided by mother both in her interview with the social worker and in the ICWA-020 identified a specific tribe and a specific family member from whom the ancestry followed. "There is nothing either in

10

the ICWA or the case law interpreting it which enables anyone to waive the tribe's right to notice and right to intervene in child custody matters. [Citations.]" (*Desiree F.*, *supra*, 83 Cal.App.4th at p. 471; see generally *Alice M.*, *supra*, 161 Cal.App.4th 1189; *Dwayne P.*, *supra*, 103 Cal.App.4th 247; *In re Jonathan D.* (2001) 92 Cal.App.4th 105.) Maternal grandmother's statement that to her knowledge maternal grandfather did not have Indian ancestry does not waive the tribe's right to notice. This is particularly so since the record contains no indication the maternal grandmother followed up with the uncle or reported back to the Department with the uncle's response.

We cannot discount mother's statements regarding possible Indian ancestry, even though they were made at a time when she was mentally unstable. The tribe was still entitled to notice based upon the information provided. (25 U.S.C. § 1903(4); § 224.3; Cal. Rules of Court, rule 5.481(a)(5)(A).) Nor is it dispositive that a report from the Kern County Child Protective Services in connection with Elijah's dependency in 2002, some 10 years earlier, reflects that mother had no known Indian ancestry. In the intervening 10 years, mother could have gained information she did not previously have that indicated she may have Indian ancestry. In addition, the earlier statement comes from an agency report that does not cite any source for the denial of Indian ancestry. (See *Desiree F.*, *supra*, 83 Cal.App.4th at p. 470 [tribal membership is determined on an individual basis, and a letter indicating no Indian heritage in a prior dependency action involving a half-sibling did not satisfy the duty to inquire in the current case].)

The Department contends that because mother was not a registered member of an Indian tribe, the ICWA notice provisions were not triggered. Lack of enrollment or registration "is not dispositive because enrollment is not the sole means to establish tribal membership." (*Antoinette S.*, *supra*, 104 Cal.App.4th at p. 1406, citing *Dwayne P.*, *supra*, 103 Cal.App.4th at p. 254 [enrollment is not the only means of establishing trial membership].) We reject the Department's contention that the ICWA's notice provisions are not triggered when there is a lack of enrollment.

*Limited Reversal*

Although the matter must be remanded to ensure compliance with the ICWA's notice requirements, we need not reverse the order terminating mother's parental rights because there has not yet been a sufficient showing that Ezra is an Indian child. If a tribe later determines that Ezra is an Indian child, "the tribe, a parent, or [the child] may petition the court to invalidate . . . [a] termination of parental rights 'upon a showing that such action violated any provision of sections [1911, 1912, and 1913].' (25 U.S.C. § 1914.)" (*Damian C.*, *supra*, 178 Cal.App.4th at p. 200.)

## DISPOSITION

The case is remanded for the limited purpose of ensuring compliance with the ICWA's notice requirements. We need not reverse the termination of mother's parental rights.

KRIEGLER, J.

We concur:

MOSK, Acting P. J.

KIRSCHNER, J. [*]

---

[*] Judge of the Los Angeles County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.