Filed 6/23/14  In re S.C. CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| In re S.C., Person Coming Under the Juvenile Court Law. | B252917 (Los Angeles County Super. Ct. No. CK68831) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> WILLIE W., <br><br> Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Anthony Trendacosta, Juvenile Court Referee.  Conditionally reversed and remanded.

Andre F.F. Toscano, under appointment by the Court of Appeal, for Defendant and Appellant.

John F. Krattli, County Counsel, James M. Owens, Assistant County Counsel, and William D. Thetford, Principal Deputy County Counsel, for Plaintiff and Respondent.

_____

Father Willie W. appeals from the juvenile court order terminating his parental rights. (Welf. & Inst. Code, § 366.26.) Father contends the court erred in appointing his guardian ad litem, reasoning the court's order is not supported by substantial evidence, and that paternal aunt was not qualified to act as his guardian ad litem because she is not an attorney. Father also contends the Los Angeles County Department of Children and Family Services (Department) failed to comply with its obligation to inquire into his Indian ancestry under the Indian Child Welfare Act (ICWA; 25 U.S.C. § 1901 et seq.). We find that father has forfeited any objection to the order appointing a guardian ad litem, and that in any event, the guardian ad litem was properly appointed. We also find that while father made an unconvincing showing concerning his Indian ancestry, remand is necessary to clear up any doubt whether ICWA applies. We therefore conditionally reverse the order terminating parental rights, and remand this case for compliance with ICWA.

## FACTUAL AND PROCEDURAL BACKGROUND

Because of the narrow issues raised on appeal, we will limit our factual summary to those facts relevant to the appointment of father's guardian ad litem and ICWA.

S.C. came to the attention of the Department on November 4, 2011, when she was born to mother, D.C., because of concerns that mother could not care for S.C. due to mother's "mental retardation" and seizure disorder.[1] Mother is not a party to this appeal. Mother identified father as the father of S.C. When a Department social worker interviewed father on November 8, he indicated that he would not be able to care for S.C. Father had been diagnosed with "mental retardation." The Department's detention report indicates that ICWA does not apply, although it does not reflect whether father was asked about his Indian ancestry.

Mother completed a Judicial Council Parental Notification of Indian Status form, indicating that she has "no Indian ancestry as far as I know." No such form was

---

[1] We affirmed termination of mother's parental rights to another child in *In re Jose C.* (2010) 188 Cal.App.4th 147.

2

completed by father.

The court's minutes from the November 14, 2011 detention hearing do not reflect that any ICWA findings were made by the trial court. The reporter's transcript for this hearing is not included in the record on appeal. At the detention hearing, the court found father to be an alleged father.

The Department's December 19, 2011 jurisdiction/disposition report states "[ICWA] does not apply. The minute order dated 11/14/2011 documents that the court did not make a finding as to ICWA in regards to the child." The Department was unable to reach father to interview him, but spoke with paternal aunt K.W., who reported that father is not able to read or write. Paternal aunt told the Department that she and father would like a DNA test to determine if he is the father, and that if he is the father, paternal aunt would like the child placed in her care.

On January 3, 2012, father appeared with paternal aunt for the arraignment hearing. Father's attorney indicated that "my client is requesting that a G.A.L. [(guardian ad litem)] be appointed." The following colloquy ensued:

"THE COURT: . . . [Father], the law requires that before I appoint a guardian ad litem I have to inquire as to whether or not you know and understand why you are here and the purposes of these proceedings. So let me ask you a couple of questions. . . . [¶] . . . [¶] . . . Did someone tell you why you are in court today?"

"THE FATHER: No. [¶] . . . [¶]

"THE COURT: Okay. Did anyone ever advise you that you may be the father of [S.C.]?

"THE FATHER: I might be. [¶] . . . [¶] . . . I want to take a test.

"THE COURT: Okay. Do you know [mother]?

"THE FATHER: I know her, yeah.

"THE COURT: All right. Did you have relations with her?

"THE FATHER: Yes.

"THE COURT: Okay. Did anyone ever advise you that the baby might be

3

at risk because of [mother's] alleged condition?

"THE FATHER:  They told me.

"THE COURT:  Okay.  And you are asking for a test, sir?

"THE FATHER:  A paternity test.

"THE COURT:  . . . So you . . . understand . . . why you need to take a paternity test?

"THE FATHER:  Because I want to see if I'm the father or not.

"THE COURT:  Okay.  [Counsel], at this particular point it appears to me that he understands why he's here and what the issues are.  Do you want to articulate to the court why you believe a guardian ad litem is necessary?

"THE COUNSEL:  . . . Your Honor, I did advise my client why he was here when I had an opportunity to speak to him.  My concern is that he --he understands why he wants a paternity test.  But I am concerned that as the case moves forward he may not understand more detailed or nuanced issues.

"THE COURT:  Is it correct that [father] is on social security disability?

"THE PATERNAL AUNT:  Yes.

"THE COURT:  . . . And  that you are the payee for him; is that correct?

"THE PATERNAL AUNT:  Yes.

"THE COURT:  Is he receiving services from any organization?

"THE PATERNAL AUNT:  Yes.  From Regional Center.  [¶]  . . . [¶]

"COURT:  [Father], are you asking that your sister be appointed as your guardian ad litem?

"THE FATHER:  Yeah.

"THE COURT:  You understand that if she is appointed as your guardian ad litem she will make the decisions in this case and not you, and she will be the one who will advise -- with whom your attorney will discuss and will assist in making the decisions, and that essentially you will not be the one directly responsible for making the decisions or consulting with your attorney?  Do you understand that?  [¶]  . . . [¶]

4

"THE FATHER: Yes.

"THE COURT: . . . And you would like your sister . . . to have that responsibility; is that correct?

"THE FATHER: Yes.

"THE COURT: All right. Then based upon [father's] agreement that a guardian ad litem be appointed, I am appointing his sister as guardian ad litem."

The trial court ordered DNA testing, indicating that "we will address ICWA issues and those things at the next hearing," which was set for January 20, 2012. However, at the January 20, 2012 hearing, ICWA was not addressed, and father's DNA results were not yet available.

Father's paternity results, establishing him as S.C.'s father, were included in the Department's March 8, 2012 last minute information for the court.

At the March 9, 2012 progress report hearing, the court found father to be S.C.'s biological father. No reporter's transcript of this hearing appears in the record, and ICWA is not referenced in the court's minutes.

At the April 26, 2012 jurisdictional and dispositional hearing, the court continued the hearing so that Evidence Code section 730 evaluations could be conducted as to mother and father, which would aid the court in deciding whether to order reunification services. ICWA was not discussed at this hearing.

Father's Evidence Code section 730 evaluation revealed that father was only able to provide limited background information, due to his intellectual deficits. Father told the evaluator he went to high school, but was unable to name the school, and did not know if he graduated, and if so, when he graduated. When asked if he attended special education classes, he responded, "no"; but he did not know the meaning of "special education classes." Father told the evaluator that he cannot read, and has no mathematical skills. He did not know what three plus three is. Father told the evaluator that he worked making soap, but he did not know for how long he had worked, or the name of the company he worked for. When asked whether he could care for S.C., father said "I don't know how to take care of a baby." He thought S.C. should live with paternal aunt.

5

The evaluator found that father presented as "alert, oriented, logical and coherent" but that his intelligence appeared to be "very limited." He was reported as having the intellect of a six-and a-half-year-old child.

At June 1 and June 7, 2012 progress report hearings, ICWA is not referenced in the court's minutes, and no reporter's transcript for these hearings is included in the record on appeal.

The continued jurisdictional and dispositional hearing was held on June 13, 2012. Father, through his guardian ad litem, signed a waiver of rights pleading no contest to the petition. A contested hearing was held as to mother. The court denied mother reunification services under Welfare and Institutions Code section 361.5, subdivision (b)(10) and (11), but exercised its discretion to offer services to father, even though he was not a presumed father. ICWA was not discussed at this hearing.

ICWA was not referenced in the minutes for subsequent hearings held on July 11, 2012, December 12, 2012, January 4, 2013, February 11, 2013, February 21, 2013, April 4, 2013, June 19, 2013, August 22, 2013, October 28, 2013, and November 15, 2013.[2] The Department's December 12, 2012 and February 21, 2013 status review reports, April 4, 2013 interim review report, June 19, 2013 Welfare and Institutions Code section 366.26 report,[3] and August 22, 2013 status review report, indicated that ICWA does not apply.

Father's (and mother's) parental rights were terminated after a contested hearing

---

[2]     Reporter's transcripts were provided for the hearings held on December 12, 2012, February 21, 2013, June 19, 2013, August 22, 2013, October 28, 2013, and November 15, 2013, none of which make any reference to ICWA.

[3]     This report indicates "[t]he Indian Child Welfare Act does not apply. The Minute Order dated 11/04/2011 documents that the Court finds that ICWA does not apply in this matter." There is no November 4, 2011 minute order, as the petition was not filed until November 14, 2011. We assume that the Department meant the November 14, 2011 minute order, which does not reference ICWA. No reporter's transcript has been provided for this hearing. However, at the time of this hearing, father was only an alleged father.

6

on November 15, 2013. S.C.'s prospective adoptive parent (who had previously adopted S.C.'s half sibling, Jose C.) was committed to adopting her. Father has timely appealed from the court's order terminating his parental rights.

**DISCUSSION**

### 1. Guardian Ad Litem

Father contends the juvenile court erred in appointing a guardian ad litem, claiming substantial evidence did not support the order appointing the guardian ad litem, and that paternal aunt was not qualified to act as his guardian ad litem because she is not an attorney. Respondent contends that this issue was waived by father's consent to the order, and his failure to challenge it earlier. We agree with respondent, and find that father has waived any right to challenge the appointment, and that his arguments also fail on their merits.

The order appointing father's guardian ad litem was entered on January 3, 2012, almost two years before father's parental rights were terminated. Between these two dates, the dispositional hearing was held. Father should have challenged the appointment order then, or by writ petition. (*In re Eli F.* (1989) 212 Cal.App.3d 228, 233 [the dispositional order is an appealable order]; see also Welf. & Inst. Code, § 395, subd. (a)(1).) An appeal from the most recent order entered in a dependency matter may not challenge previous orders for which the time for filing an appeal has lapsed. (*Sara M. v. Superior Court* (2005) 36 Cal.4th 998, 1018.) "Permitting a parent to raise issues going to the validity of a final earlier appealable order would directly undermine dominant concerns of finality and reasonable expedition." (*In re Janee J.* (1999) 74 Cal.App.4th 198, 207; see also *In re Meranda P.* (1997) 56 Cal.App.4th 1143, 1151-1153 [mother's claim, on appeal from an order terminating parental rights, that she had been denied her right to counsel at the detention hearing, was waived by failure to raise it before her parental rights were terminated].) Here, if there had been error in the appointment of a guardian ad litem, father should have raised it earlier in the proceedings,

7

before permanency had been established for S.C.[4]  Moreover, it was not just father's attorney but father himself who asked the court to appoint his sister as his guardian ad litem.  He cannot now complain on appeal because the court granted his request.  (See, e.g., *In re Troy Z.* (1992) 3 Cal.4th 1170, 1181.)

Father argues that waiver should not apply because to do so would infringe on his due process rights.  (*In re Janee J.*, *supra*, 74 Cal.App.4th at p. 208 ["the waiver rule will be enforced unless due process forbids it"]; *In re Meranda P.*, *supra*, 56 Cal.App.4th at pp. 1151-1155.)  Because father consented to the appointment, we find that his due process rights are not implicated.  (*In re Jessica G.* (2001) 93 Cal.App.4th 1180, 1187 ["If consent is given, due process is served since the parent will have participated in the decision."].)

Father's cited authorities do not compel a different result.  (See *In re M.F.* (2008) 161 Cal.App.4th 673, 681-682 [waiver rule did not apply when guardian ad litem was not appointed because mother could not be expected to challenge the failure to appoint a guardian ad litem due to her incompetence]; *In re Enrique G.* (2006) 140 Cal.App.4th 676, 682-683 [waiver rule did not apply where court failed to conduct an inquiry and did not seek mother's consent]; *In re Jessica G.*, *supra*, 93 Cal.App.4th at p. 1187 [waiver did not apply because mother's due process rights were violated when the court did not obtain mother's consent to the appointment of a guardian ad litem and did not assess mother's competence].)

Even if we were to consider father's claims, they fail on their merits.  Courts have the inherent power to appoint guardians ad litem.  (*Mabry v. Scott* (1942) 51 Cal.App.2d 245, 256.)  By statute, "[i]f an insane or incompetent person is a party to an action or

---

**4**     Father claims that he could not be expected to exercise his appellate rights at an earlier juncture, as neither his guardian ad litem nor his attorney, who both assented to the appointment of a guardian, would have challenged the appointment order.  We are not persuaded.  Father requested assistance of a guardian ad litem; he could have just as easily voiced his dissatisfaction with the appointment, alerting his counsel or the court to problems with the appointment.

8

proceeding," appointment of a guardian ad litem is "upon the application of a relative or friend of such insane or incompetent person, or of any other party to the action or proceeding, or by the court on its own motion." (Code Civ. Proc., § 373, subd. (c); see *Briggs v. Briggs* (1958) 160 Cal.App.2d 312, 318.) "The statutes regarding appointment of guardians ad litem were enacted to protect minors and insane and incompetent persons — not to preclude them from their legal rights." (*Briggs*, at p. 319; see § 372.)

Before a guardian ad litem may be appointed to represent a parent in a dependency proceeding, due process requires notice to the affected parent and at least an informal hearing. (*In re Jessica G.*, *supra*, 93 Cal.App.4th at pp. 1186-1187.) The parent is entitled to receive from the court or counsel an explanation of "the purpose of a guardian ad litem and why the attorney felt one should be appointed." (*In re Sara D.* (2001) 87 Cal.App.4th 661, 672.) The parent should also be given an opportunity to respond. (*Ibid.*) The trial court must make an inquiry sufficient to satisfy the court that the parent understands the nature of the proceedings and can assist the attorney in protecting his or her rights. (*In re Jessica G.*, at p. 1188.) "If consent is given, due process is served since the parent will have participated in the decision." (*Id.* at p. 1187.)

Here, the record amply supports that father not only consented to the appointment of the guardian ad litem but personally requested that his sister be appointed as his guardian ad litem, the trial court properly explained the role of a guardian ad litem in the proceedings, and conducted an inquiry to determine whether appointment of a guardian ad litem was warranted. Therefore, the order must be affirmed as long as it is supported by substantial evidence. (*In re Jessica G.*, *supra*, 93 Cal.App.4th at p. 1186.)

"[A] guardian ad litem should be appointed [for a mentally incompetent person] if the requirements of either Penal Code section 1367 or Probate Code section 1801 are met." (*In re Sara D.*, *supra*, 87 Cal.App.4th at p. 667.) A defendant is mentally incompetent under Penal Code section 1367, subdivision (a) "if, as a result of mental disorder or developmental disability, the defendant is unable to understand the nature of the criminal proceedings or to assist counsel in the conduct of a defense in a rational manner." Probate Code section 1801 defines as incompetent, a person "who is unable to

9

provide properly for his or her personal needs for physical health, food, clothing, or shelter," is "unable to manage his or her own financial resources or resist fraud or undue influence" or is "developmentally disabled." (*Id.*, subds. (a), (b) & (d).)  To warrant appointment, the "trial court must find by a preponderance of the evidence that the parent comes within the requirements of either section." (*In re Sara D.*, at p. 667.)

Although father appeared to understand what a paternity test is when he was queried by the court, it was clear that he suffered from significant mental deficits, and that his attorney was concerned about his ability to understand and participate in future proceedings.  Father had doubts about his ability to understand the proceedings, and desired the help of his sister, who was appointed his guardian ad litem.  Father was a Regional Center client, received social security disability income, and his sister was his designated payee.  These facts are substantial evidence that father was incompetent within the meaning of Probate Code section 1801 and Penal Code section 1367.  Father would simply have us reweigh the evidence on appeal, which we cannot do.

Father also contends the court erred when it appointed his sister, a nonattorney, as his guardian ad litem.  Father cites absolutely no authority requiring a guardian ad litem to be an attorney, and the statutes concerning appointment set forth no such requirement. (See Code Civ. Proc., § 372 et seq.)

## 2.    ICWA

Father contends that neither the Department nor the juvenile court inquired about his Indian ancestry, and that reversal is therefore required.  On appeal, father's attorney has made an "offer of proof" that ICWA is implicated in this case.  The "offer of proof" of father's appellate counsel does not eliminate our doubts about whether ICWA applies. However, because the record shows that the Department did not comply with its duty to inquire about father's Indian ancestry, and because it appears that some further investigation may be warranted, we conditionally reverse and remand for this limited purpose.

ICWA provides that "where the court knows or has reason to know that an Indian child is involved," the child's tribe must be notified of any pending proceedings to

10

terminate parental rights. (25 U.S.C. § 1912(a); see also *In re Antoinette S.* (2002) 104 Cal.App.4th 1401, 1406.) ICWA's notice requirements are interpreted broadly, and they are triggered by information suggesting that the child may be an Indian child. (*Dwayne P. v. Superior Court* (2002) 103 Cal.App.4th 247, 256-258; see also Welf. & Inst. Code, § 224.3, subd. (b)(1) [reason to know exists where "a member of the child's extended family provides information suggesting the child is . . . eligible for membership in a tribe or one or more of the child's biological parents, grandparents, or great-grandparents are or were a member of a tribe"].)

ICWA does not impose a duty to inquire whether the child is an Indian child. (*In re H.B.* (2008) 161 Cal.App.4th 115, 120-121.) However, ICWA allows the states to set higher standards of protection. (25 U.S.C. § 1921.) Under California law, the juvenile court and the Department have an "affirmative and continuing duty to inquire whether a child . . . is or may be an Indian child . . . ." (Welf. & Inst. Code, § 224.3, subd. (a).) Courts must order that parents complete the Parental Notification of Indian Status form when they first appear in the proceedings. (Cal. Rules of Court, rule 5.481(a)(2) & (3).) Once the court or Department knows or has reason to know that an Indian child is involved, the Department must inquire further into the child's possible Indian status, by interviewing the parents and extended family, as well as contacting the Bureau of Indian Affairs, the tribes, and any other person who may have relevant information. (Welf. & Inst. Code, § 224.3, subd. (c).)

The record in this case does not show that father was ever asked any ICWA-related questions or directed to complete the Parental Notification of Indian Status form, even though he appeared early in the case, and was interviewed by the Department. In contrast, mother did complete a Parental Notification of Indian Status form, indicating that she has no Indian heritage. Respondent contends that father provided an incomplete record regarding ICWA compliance, as the reporter's transcripts for all of the hearings have not been provided. Alternatively, respondent argues that the error is harmless since father made an insufficient offer of proof on appeal that he has any Indian heritage. On this record, where none of the minutes reflect that father was asked about his Indian

11

ancestry, and he did not complete a Parental Notification of Indian Status form, there is no basis for a finding that an inquiry was conducted into father's Indian ancestry. (See *In re J.N.* (2006) 138 Cal.App.4th 450, 461 [record did not support compliance with ICWA where no Parental Notification of Indian Status form had been completed].)

Nevertheless, the lack of compliance with the duty to inquire has been held harmless in cases where there is no indication that ICWA applies. (See *In re Rebecca R.* (2006) 143 Cal.App.4th 1426, 1431 [finding harmless error where there was no offer of proof on appeal that father had any ICWA-related information]; *In re N.E.* (2008) 160 Cal.App.4th 766, 769 [same]; but see *In re J.N.*, *supra*, 138 Cal.App.4th at p. 461 [court refused to speculate what mother's response would have been had she been asked about her Indian ancestry].)

In *In re Rebecca R.*, *supra*, 143 Cal.App.4th at page 1430, the court rejected the father's claim that reversal was required for lack of ICWA compliance because he "failed to show a miscarriage of justice, which is the fundamental requisite before an appellate court will reverse a trial court's judgment." The court explained that "[f]ather is here, now, before this court. There is nothing whatever which prevented him, in his briefing or otherwise, from removing any doubt or speculation. He should have made an offer of proof or other affirmative representation that, had he been asked, he would have been able to proffer some Indian connection sufficient to invoke the ICWA. He did not. [¶] In the absence of such a representation, the matter amounts to nothing more than trifling with the courts." (*Id.* at p. 1431.)

Similarly, in *In re N.E.*, *supra*, 160 Cal.App.4th at page 769, a father appealed the termination of his parental rights, arguing that the social services agency failed to comply with its inquiry duties under ICWA. The court determined it was not clear whether the agency had complied with its inquiry obligations, but found, nonetheless, that "[e]ven if the juvenile court and SSA [(Social Services Agency)] failed in their inquiry responsibilities, we cannot disturb the juvenile court's order without a showing [father] was prejudiced by the claimed error. (Cal. Const., art. VI, § 13.) And in this case, where

12

there is absolutely no suggestion by [father] that he in fact has any Indian heritage, he has failed to demonstrate the requisite prejudice." (*Ibid.*)

Other courts have agreed that a parent must make an affirmative showing that a miscarriage of justice would result in order to obtain a reversal for an ICWA error. (See *In re S.B.* (2005) 130 Cal.App.4th 1148, 1162, fn. omitted ["[a]n ICWA notice violation may be held harmless when the child's tribe has actually participated in the proceedings [citation] or when, even if notice had been given, the child would not have been found to be an Indian child, and hence the substantive provisions of the ICWA would not have applied"]; *In re Miracle M.* (2008) 160 Cal.App.4th 834, 847 ["Mother has not demonstrated how giving the parents further [ICWA] notice would generate additional information"].)

We agree with the line of authority that father must establish prejudicial error, but we cannot decide with confidence that father has not shown prejudice because the Department failed to comply with its duty to inquire. Here, father's appellate counsel inserted the following footnote on the second to last page of his opening brief: "Pursuant to *In re Rebecca R.* (2006) 143 Cal.App.4th 1426, for the purpose of removing this Court's doubt or speculation about his Indian ancestry, Father, through his undersigned counsel, makes an offer of proof that had the paternal aunt been asked if Father's family has American Indian ancestry, she would have responded there is, and other paternal relatives know from which tribe or tribes and may provide additional information."

Although this offer of proof does not "remov[e] any doubt or speculation" that ICWA applies in this case (*In re Rebecca R.*, *supra*, 143 Cal.App.4th at p. 1431), we conclude that further investigation is warranted. (See Welf. & Inst. Code, § 224.3, subds. (a), (c).) In the interest of eliminating father's somewhat dubious claim, a conditional remand is warranted.

The Department also contends that any error was harmless because father has not demonstrated that S.C. is an Indian child, and that the purposes of ICWA would not be served because father never had custody of S.C., and therefore there is no Indian family

13

to preserve.  But California law imposes a duty to inquire into a child's possible Indian ancestry, and the record does not demonstrate that duty was fulfilled.

**DISPOSITION**

The order is conditionally reversed and remanded, with directions that the juvenile court order the Department to inquire into father's Indian ancestry, and hold a hearing to determine if there is adequate information to trigger ICWA's notice provisions.  If the court determines there is not adequate information, or if it determines there is adequate information and orders notice be given, but after proper notice no Indian tribe seeks to intervene or otherwise indicates S.C. is an Indian child as defined by ICWA, the court shall reinstate the judgment.  If, after proper notice an Indian tribe determines S.C. is an Indian child under ICWA, the court shall conduct a new Welfare and Institutions Code section 366.26 hearing in accordance with ICWA.


GRIMES, J.

We concur:


RUBIN, Acting P. J.


FLIER, J.

14