Filed 11/23/15  In re Christina C. CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| In re CHRISTINA C., a Minor. | |
| CYNTHIA R. et al., | D068258 |
| Plaintiffs and Respondents, | |
| v. | (Super. Ct. No. A59821) |
| JOHN T., | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, Edlene McKenzie, Commissioner.  Conditionally reversed with instructions.

Michele Anne Cella, under appointment by the Court of Appeal, for Defendant and Appellant.

Terence M. Chucas for Plaintiffs and Respondents.

Julie Braden for Minor.

John T. appeals following a judgment terminating his parental rights to his biological daughter Christina C., as a result of a petition filed by Christina's mother and stepfather, Cynthia and Larry R., to facilitate a stepparent adoption.[1] John's sole contention on appeal is that the trial court erred in finding that the Indian Child Welfare Act (ICWA) (25 U.S.C. § 1901 et seq.) did not apply without making further inquiry. We conclude that the trial court failed to fulfill its affirmative and continuing duty to inquire about the applicability of ICWA, and accordingly we conditionally reverse the judgment with specific instructions for the trial court to comply with ICWA.

I

FACTUAL AND PROCEDURAL BACKGROUND

Christina was born to Cynthia in 2006 as a result of a dating relationship between Cynthia and John. John was not identified as the father on Christina's birth certificate and did not sign a voluntary declaration of paternity, but both John and Cynthia reported that John is Christina's biological father. John was incarcerated at the time of Christina's birth, but Cynthia brought Christina to visit John during his incarceration. According to Cynthia, when John was released from custody in 2008, he visited Christina several times, but John's visitations with Christina and his contact with Cynthia dropped off thereafter. In contrast to Cynthia's testimony, John contended that he continued to have regular visits with Christina until he was incarcerated again in 2012.

---

[1]    To protect the parties' privacy, we refer to them by their first names and intend no disrespect by doing so.

2

In May 2014, while John was in prison, Cynthia and Larry filed a petition pursuant to Family Code section 7662 to terminate John's parental rights so that Larry could adopt Christina in a stepparent adoption. John was served with the petition and requested that an attorney be appointed to represent him.

John remained incarcerated at the time of the initial hearing on August 8, 2014, and did not appear. Counsel was appointed for John, and the court directed counsel to have John fill out the "ICWA form" and provide it to the court prior to the pretrial status conference set for September 26, 2014.

On September 4, 2014, John filled out Judicial Council form ICWA-030 and signed it under penalty of perjury. Although the form that John filled out was not designed for an initial inquiry into a child's possible Indian heritage,[2] John's completion of the form indicated that he had no information about any Indian ancestry. Specifically, for each question on the form inquiring about the tribal affiliation of John and his parents

---

[2]     The most appropriate Judicial Council form for John to have filled out initially would have been form ICWA-020, titled Parental Notification of Indian Status, which is a one-page form that asks five general questions relevant to determining whether a child has Indian heritage, including whether the person completing the form "may have Indian ancestry." (See Cal. Rules of Court, rule 5.481(a)(2) [stating that at the initiation of an applicable proceeding, the court must order the parent to complete form ICWA-020].) (All further rule references are to the Cal. Rules of Court.) Instead, John filled out Judicial Council form ICWA-030, titled Notice of Child Custody Proceeding for Indian Child, which is a 10-page form designed to give notice to Indian tribes and other interested parties that an Indian child is the subject of a custody proceeding and provides the person filling out the form the ability to set forth extensive ancestry information about the child, including the names, addresses and Indian tribe affiliation of the child's parents, grandparents and great-grandparents. (See rule 5.481(b)(1) [requiring that notice be sent on form ICWA-030].)

3

or grandparents, John wrote "does not apply."[3]  The form also indicated that no member of Christina's family had ever attended an Indian school, received medical treatment at an Indian health clinic, or lived on an Indian reservation or rancheria.

The file stamp on the ICWA form indicates that it was filed with the court on September 10, 2014.  However, the trial court was apparently not aware during the September 26, 2014 pretrial status conference that John had completed and filed the ICWA form.  Thus, at that hearing, which John attended telephonically from prison, the trial court explained that it needed to address the ICWA issue.  The trial court inquired whether John was aware of any Indian ancestry in his family.  John replied, "Yes, I believe I do have Indian ancestry."  The court inquired what tribe was involved, and John stated, "I'll have to look into that basically, but Cherokee."  Upon further questioning by the court, John stated that his grandfather and his great-grandmother, who were from Dallas, Texas, told him that he might have Cherokee ancestry.  John stated that the Indian ancestry may be on both his mother's and his father's side, and that he "just received" a family tree from his aunt, and he could get in contact with her for more information. John gave the names of his aunt, his grandfather and his great-grandmother.

During the September 26, 2014 hearing, John's attorney stated to John that he would "be in contact with you to get this information from you that you are mentioning now after you have an opportunity to get a hold of these people."  The trial court set

---

3    John also indicated "unknown" for the name and address of his mother, his father and his grandparents.

another hearing for October 24, 2014, to address ICWA issues, and told John that it would "make sure that you are available telephonically." The minute order for the September 26, 2014 hearing stated that a pretrial status conference was scheduled for October 24, 2014, and that "the courtroom clerk is to make arrangements directly with the institution" for John to appear telephonically at that hearing.

At the October 24, 2014 hearing, John did not appear by telephone, apparently because neither the courtroom clerk nor John's attorney had made arrangements for his appearance. Noting John's absence, the trial court stated at the beginning of the hearing, "There was some indication that [John] was going to appear telephonically this morning. Do we have a number to call him?" John's attorney responded, "I do not have a number for him. My investigator does, Your Honor, but he is not expecting a call this morning."

John's attorney then explained to the court that he had discussions with John about getting information about his possible Indian ancestry from relatives but, as of the prior week, John had not yet received any information as communication was made difficult by the fact that John was in prison. The trial court drew counsel's attention to the ICWA form that John had filed on September 10, 2014, which indicated that John knew of no Indian ancestry. John's attorney, apparently seeing the completed form for the first time, stated, "Very informative," and commented that "[i]t appears as though there's no information forthcoming." The trial court then stated, "I think I can go ahead and make that finding. Any objection?" John's attorney stated, "I would certainly not object," and Christina's counsel stated that she also had no objection. The trial court then made a finding "that the Indian Child Welfare Act does not apply."

5

At a June 9, 2015 hearing, at which John appeared and testified, the trial court found that Cynthia and Larry met the burden of proof on their petition, and it therefore entered judgment terminating John's parental rights. At the hearing, the trial court noted that it "made a finding previously that the Indian Child Welfare Act does not apply. That finding was made on October 24, 2014."

John filed a notice of appeal, stating that he was appealing form the order of June 9, 2015, terminating his parental rights.

II

DISCUSSION

John's sole argument on appeal is that the trial court erred in finding that ICWA did not apply because it was required to make further inquiry rather than relying solely on the ICWA form that John completed on September 4, 2014.

A.    *Applicable Law*

We begin with a focus on the applicable legal provisions. "In 1978, Congress enacted ICWA in an effort to protect and preserve Indian tribes and their resources. (25 U.S.C. §§ 1901, 1902.) ICWA was specifically designed to help Indian children retain their familial, tribal and cultural ties. (*In re Robert A.* (2007) 147 Cal.App.4th 982, 988.) It sets forth minimum federal standards for removing Indian children from their families and placing these children in foster or adoptive homes that reflect the unique values of Indian culture. (25 U.S.C. § 1902; *Mississippi Choctaw Indian Band v. Holyfield* (1989) 490 U.S. 30, 37.) Consistent with Congress's goals, '[p]roceedings in state courts involving the custody of Indian children shall follow strict procedures and

6

meet stringent requirements to justify any result in any individual case contrary to those preferences.' (Bureau of Indian Affairs, Guidelines for State Courts; Indian Child Custody Proceedings, 44 Fed. Reg. 67584, 67586 (Nov. 26, 1979) (Guidelines).)[4] [¶] Among ICWA's procedural safeguards is the duty to inquire into a dependent child's Indian heritage and to provide notice of the proceeding to any tribe or potential tribes, the parent, any Indian custodian of the child and, under some circumstances, to the Bureau of Indian Affairs. ICWA's notice requirement provides: 'In any involuntary proceeding in a State court, where the court knows or has reason to know that an Indian child is involved, the party seeking the foster care placement of, or termination of parental rights to, an Indian child shall notify the parent or Indian custodian and the Indian child's tribe, by registered mail with return receipt requested, of the pending proceedings and of their right of intervention. . . . No foster care placement or termination of parental rights proceeding shall be held until at least ten days after receipt of notice by the parent or Indian custodian and the tribe. . . .' (25 U.S.C. § 1912(a) . . . ; see also Welf. & Inst. Code, § 224.2, subd. (a); . . . rule 5.481(b); Guidelines, 44 Fed. Reg. at p. 67588.)"

(*In re G.L.* (2009) 177 Cal.App.4th 683, 690-691, italics & fn. omitted.)[5]

---

4    The federal government has recently issued revised Guidelines for State Courts and Agencies in Indian Child Custody Proceedings. (80 Fed. Reg. 10146-02 (Feb. 25, 2015).)

5    Under ICWA, "[o]nce notice is given, the parent and the tribe have the right to petition to transfer the case to tribal court. [Citation.] If the matter is not transferred to tribal court, ICWA imposes various procedural and substantive requirements on the proceedings." (*In re Alexandria P.* (2014) 228 Cal.App.4th 1322, 1338 (*Alexandria P.*).)

California has enacted specific provisions to implement ICWA.[6]  As relevant here, the Family Code provides that in any " 'Indian child custody proceeding,' " including a proceeding to terminate parental rights (Fam. Code, § 170, subd. (c)), a court shall comply with ICWA, including its notice requirements.  (Fam. Code, §§ 170, subd. (b), 180.)  Further, California has adopted rules of court to further clarify the proceedings required in actions involving ICWA (rule 5.480 et seq.), and which  are specifically applicable to "[p]roceedings under the Family Code resulting in adoption or termination of parental rights."  (Rule 5.480(4).)

Under the applicable provisions, a trial court has a duty to provide notice under ICWA whenever "the court . . . has reason to know that an Indian child is involved" (25 U.S.C. § 1912; Welf. & Inst. Code, § 224.2, subd. (a)),[7] which, by statute, includes when a family member "provides information suggesting . . . one or more of the child's biological parents, grandparents, or great-grandparents are or were a member of a tribe"

---

[6]     Effective in 2006, "Senate Bill 678 incorporated ICWA's requirements into California statutory law, revising several provisions of the Family, Probate, and Welfare and Institutions Codes. . . .  [¶]  'In certain respects, California's Indian child custody framework sets forth greater protections for Indian children, their tribes and parents than ICWA.' "  (*Alexandria P.*, *supra*, 228 Cal.App.4th at p. 1339.)

[7]     Even though this is not a proceeding under the Welfare and Institutions Code, its provisions are applicable as Family Code section 177, subdivision (a) specifically provides that certain sections of the Welfare and Institutions Code concerning ICWA (Welf. & Inst. Code, §§ 224.2–224.6, 305.5, 361.31, 361.7) apply in Family Code proceedings implicating ICWA.

(Welf. & Inst. Code, § 224.3, subd. (b)(1)).[8]  When notice is required, it must be provided to all the tribes of which the child may be a member or eligible for membership. (Fam. Code, § 180, subd. (b)(3); Welf & Inst. Code, § 224.2, subd. (a)(3).)  If the tribe cannot be determined, notice shall be given to the Secretary of the Interior.  (25 U.S.C.A. § 1912.)  When the required notice is provided, but "neither a tribe nor the Bureau of Indian Affairs has provided a determinative response within 60 days after receiving that notice, the court may determine that [ICWA] does not apply to the proceedings."  (Welf. & Inst. Code, § 224.3, subd. (e)(3).)

"The Indian status of the child need not be certain to invoke the notice requirement.  [Citation.]  Because the question of membership rests with each Indian tribe, when the juvenile court knows or has reason to believe the child may be an Indian child, notice must be given to the particular tribe in question or the Secretary [of the Interior]."  (*In re Desiree F.* (2000) 83 Cal.App.4th 460, 471.)  " '[T]he juvenile court needs only a suggestion of Indian ancestry to trigger the notice requirement.' "  (*In re Robert A.*, *supra*, 147 Cal.App.4th at p. 989.)  "Given the interests protected by the Act, the recommendations of the guidelines, and the requirements of our court rules, the bar is

---

[8]      " 'Indian child' . . . [means] any unmarried person who is under the age of 18 who 'is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe.' ([25 U.S.C. ]§ 1903(4).)" As to the issue of whether the child's parent is a member of an Indian tribe, lack of enrollment or registration " 'is not dispositive because enrollment is not the sole means to establish tribal membership.' " (*In re Antoinette S.* (2002) 104 Cal.App.4th 1401, 1406 (*Antoinette S.*).)

indeed very low to trigger ICWA notice." (*Antoinette S.*, *supra*, 104 Cal.App.4th at p. 1408.)

Further, as relevant here, the law provides that throughout a proceeding the court has "an 'affirmative and continuing duty' . . . to 'inquire whether a child . . . is or may be an Indian child." (*In re Gabriel G.* (2012) 206 Cal.App.4th 1160, 1165 (*Gabriel G.*) [citing Welf. & Inst. Code, § 224.3, subd. (a) & rule 5.481(a)(4)]; see *In re J.D.* (2010) 189 Cal.App.4th 118, 123.)

In reviewing a finding by the trial court on whether ICWA applies to the proceedings, " '[w]e review the trial court's findings for substantial evidence.' " (*In re Christian P.* (2012) 208 Cal.App.4th 437, 451 (*Christian P.*).)

B. *The Issue Has Not Been Forfeited*

The first issue we consider is whether, as Cynthia and Larry contend, because neither John nor his attorney objected to the trial court's finding that ICWA was inapplicable, John has forfeited his right to argue on appeal that the trial court failed to comply with ICWA. As we will explain, we reject the forfeiture argument because "[t]he notice requirements of ICWA are mandatory and cannot be waived by the parties." (*In re G.L.*, *supra*, 177 Cal.App.4th at p. 691.)

"The generally accepted rule . . . is that the forfeiture doctrine does not bar consideration of ICWA notice issues on appeal. . . . ' "[T]he notice requirements serve the interests of the Indian tribes 'irrespective of the position of the parents' and cannot be waived by the parent." . . . A parent in a dependency proceeding is permitted to raise ICWA notice issues not only in the juvenile court, but also on appeal even where, as here,

10

no mention was made of the issue in the juvenile court.' " (*In re Alice M.* (2008) 161 Cal.App.4th 1189, 1195, citation omitted.) "The right to raise the issue for the first time on appeal is not limited solely to the affected tribes. Instead, 'any parent . . . may petition any court of competent jurisdiction to invalidate' . . . termination of parental rights 'upon a showing that such action violated any provision of sections 1911, 1912, and 1913.' (25 U.S.C. § 1914.) Thus, because it is critical to the tribes in which the dependent child may have existing or future membership, and because tribes depend on parents in the first instance to notify . . . courts of known or potential Indian ancestry, parents who have failed to raise the notice issue below may raise it on appeal." (*Antoinette S.*, *supra*, 104 Cal.App.4th at p. 1408.) Further, even if, as here, a party's attorney expressly states that he has no objection to a finding that ICWA does not apply, "the comments of the parents' attorneys do not constitute invited error or other waiver of appellate review." (*Dwayne P. v. Superior Court* (2002) 103 Cal.App.4th 247, 257 (*Dwayne P.*).)[9]

Based on this authority, even though John did not object to the trial court's finding that ICWA did not apply, and John's attorney stated that he had no objection to that finding, John has not forfeited his ability to raise, for the first time on appeal, the issue of the trial court's noncompliance with ICWA notice requirements.

Cynthia and Larry also argue that John's appeal of the ICWA finding is procedurally improper because John was required to file an appeal from that finding

---

[9]    Moreover, we observe that John was not present telephonically at the October 24, 2014 hearing at the which the trial court made the finding on the inapplicability of ICWA and thus had no opportunity to interpose his own objection.

11

within 60 days from the date it was made on October 24, 2014, instead of waiting until the entry of the judgment in June 2015 to file an appeal. We reject Cynthia and Larry's argument because there is no authority for their assumption that the trial court's October 24, 2014 finding on the inapplicability of ICWA was an immediately appealable order. Code of Civil Procedure section 904.1 lists the type of prejudgment orders that are immediately appealable, but does not include an order finding that ICWA is inapplicable. Accordingly, John properly waited until final judgment was entered in this case to appeal from the trial court's finding on ICWA.

C. *The Trial Court Failed to Comply with ICWA by Not Following up on Information That John May Have Indian Ancestry*

We now turn to John's substantive argument that the trial court erred in making a finding, under the specific circumstances presented here, that ICWA does not apply.

ICWA's notice provisions are to be interpreted "broadly" and " 'it is preferable to err on the side of giving notice and examining thoroughly whether the juvenile is an Indian child.' " (*Dwayne P.*, *supra*, 103 Cal.App.4th at p. 257.) Further, as we have explained, the court has "an affirmative duty to inquire" whether a child is or may be an Indian child. (Welf. & Inst. Code, § 224.3, subd. (a) & rule 5.481(a) [both establishing an "affirmative and continuing duty to inquire"].) As we will explain, perhaps because of some confusion on the evidence that it had before it, the trial court here did not properly carry out its duty to inquire into the applicability of ICWA.

Case law establishes that if information is too vague, attenuated and speculative to suggest that a family member is or was the member of a tribe, the trial court is justified in

12

finding that ICWA does not apply. (*In re J.D.*, *supra*, 189 Cal.App.4th at p. 125 [children's paternal grandmother statement that " 'I can't say what tribe it is and I don't have any living relatives to provide any additional information. I was a little kid when my grandmother told me about our Native American ancestry but I just don't know which tribe it was[,]' . . . is too vague, attenuated and speculative to give the dependency court any reason to believe the children might be Indian children."]; *In re Jeremiah G.* (2009) 172 Cal.App.4th 1514, 1516 [assertion of a " 'possibility' the great-grandfather of the minor's father 'was Indian,' without more, was too vague and speculative to require ICWA notice"]; *In re O.K.* (2003) 106 Cal.App.4th 152, 157 [information provided by the paternal grandmother that the father " 'may have Indian in him' " was not based on any known Indian ancestry and thus was "too vague and speculative to give the juvenile court any reason to believe the minors might be Indian children"].) Here, however, we are not faced simply with a situation in which John stated that he may have some Indian ancestry and was unable to provide more specific information. Instead, at the time that the trial court made its finding that ICWA did not apply, John had already informed the court that he thought he had Cherokee ancestry and was still waiting for further information about his Indian ancestry from relatives, with no substantial evidence before the trial court that John would be unable to obtain that information. Perhaps erroneously believing that John filled out the ICWA form *after* the September 26, 2014 hearing and *after* trying to obtain information from relatives, the trial court prematurely cut off the inquiry into whether ICWA applied without sufficiently recognizing or resolving the

13

ambiguity presented by the information before it and without waiting to hear from John about the information he was gathering from relatives.

This situation is analogous to *In re A.G.* (2012) 204 Cal.App.4th 1390, 1397, in which the father reported that he had Indian ancestry and was gathering more information, but the social worker failed to follow up with the father to find out what he had learned. The appellate court concluded that due to the failure to properly investigate and obtain complete information about the father's possible Indian ancestry, the order terminating father's parental rights had to be reversed to allow the investigation to proceed. (*Id*. at p. 1402.) Here, like the social worker in *In re A.G.*, the trial court had an affirmative and continuing duty to inquire as to whether ICWA applied. (*Gabriel G.*, *supra*, 206 Cal.App.4th at p. 1165; Welf. & Inst. Code, § 224.3, subd. (a); rule 5.481(a)(4).) The trial court had received information from John at the September 26, 2014 hearing, putting it on notice that John had possible Indian ancestry and that John would be investigating by contacting relatives. Indeed, John's attorney confirmed that John had contacted relatives and was waiting for a response. Nevertheless, without any new information before it about the information that John was attempting to obtain from relatives, the trial court found that ICWA did not apply. Under those circumstances, the trial court did not satisfy its affirmative and continuing duty of

14

inquiry regarding the applicability of ICWA and made a finding, not reasonably supported by substantial evidence before it, that ICWA did not apply.[10]

Also applicable here is *Gabriel G.*, *supra*, 206 Cal.App.4th 1160, in which the father gave conflicting information about whether he was a tribal member, in that he both filed an unsigned ICWA form indicating that his grandfather was a tribal member and told a social worker that he had no Indian ancestry. (*Gabriel G.*, at pp. 1163-1164.) The trial court failed to make a finding on whether ICWA applied, and on appeal the respondent Department of Children and Family Services argued that the trial court had no reason to know that ICWA applied or to inquire further because the father's ICWA form was not signed. (*Gabriel G.*, at p. 1167.) The appellate court disagreed, stating that "[h]aving received conflicting information, the juvenile court had a duty to further inquire of father, who was present at the 12-month hearing, about his Indian heritage, and certainly before terminating parental rights. . . . In the absence of further inquiry or information that reliably rebutted father's representation that [the child] has specific Cherokee heritage through the paternal grandfather, notice was required to be sent to the three federally-recognized Cherokee tribes prior to the court considering termination of

_____

[10]     Cynthia and Larry point to other evidence in the record, developed after the trial court's finding on ICWA, which they contend lends support to a finding that John was proceeding under a strategy to delay the judgment in this case and that his statements at the September 26, 2014 hearing about his Indian ancestry therefore lack credibility. Among other things, at a June 5, 2015 hearing, counsel for John stated, "I seem to be getting the feeling that my client is using me to keep delaying this thing." However, all of the evidence that Cynthia and Larry point to was developed long after the trial court's finding on October 24, 2014, that ICWA does not apply, and thus we do not consider it in determining whether substantial evidence supports the trial court's finding on ICWA.

15

parental rights, since father's claim gave the court 'reason to know that an Indian child is involved.' ([Welf. & Inst. Code, ]§ 224.3, subd. (d).)" (*Id*. at p. 1168, citation omitted.) Here too, the conflicting statements from John about his Indian ancestry gave the trial court a duty to inquire further, and prevented it from resolving the ICWA issue by relying solely on one source of information, namely the ICWA form that John completed *before* he claimed possible Indian ancestry at the September 26, 2014 hearing.[11]

Cynthia and Larry argue that the trial court's failure to investigate John's possible Indian ancestry was harmless error. As we will explain, we disagree. Failure to comply with ICWA notice requirements may in some cases be determined to be harmless error. (*In re G.L.*, *supra*, 177 Cal.App.4th at p. 696.) Specifically, as relevant here, when the trial court fails to inquire into the applicability of ICWA, but there was no suggestion in the record that the parent might have Indian ancestry, the trial court's error may be considered harmless. (*In re N.E.* (2008) 160 Cal.App.4th 766, 769 [ICWA notice error was harmless when the record contained "absolutely no suggestion" by the father that he "in fact has any Indian heritage"]; *In re Rebecca R.* (2006) 143 Cal.App.4th 1426, 1431 [absence of indication in the record that the social worker followed up on the trial court's

---

11     Cynthia and Larry contend that "[t]here is no substantial evidence in the record to indicate John has any Indian ancestry, but there is substantial information in the record that he was given every opportunity to produce the evidence if any existed." We disagree. Among other things, John had no opportunity to appear at the October 24, 2014 hearing and explain the results of his research on his Indian ancestry. No arrangements were made for John to be present at the hearing despite the trial court's specific prior instructions to the contrary, and the trial court appears to have made its finding based on the incorrect assumption the ICWA form was John's response after he researched his Indian ancestry.

16

direction to determine whether ICWA applied was harmless where there was no evidence in the record suggesting father's Indian ancestry].) However, this is not such a case. John stated on the record that he believed he *did* have Indian ancestry, and he was in the process of obtaining more information when the trial court made its finding that ICWA did not apply. Therefore, we are not able to conclude that the error was harmless based on the information in the record. (See *In re A.G.*, *supra*, 204 Cal.App.4th at p. 1401 [rejecting harmless error argument when the record contained evidence of father's claim of Indian ancestry, triggering the obligation to make further inquiry].)

The practice in cases in which a trial court or another party has failed to fulfill its duty to fully investigate the applicability of ICWA is to conditionally reverse and remand to the trial court with specific instructions. (*In re Hunter W.* (2011) 200 Cal.App.4th 1454, 1467 [when "it is shown that the court . . . knew or had reason to know the child was an Indian child but failed to make an inquiry, we remand with instructions to ensure compliance with ICWA"]; *Christian P.*, *supra*, 208 Cal.App.4th at p. 452 [in case of defective ICWA notice, "rather than reversal, the proper remedy here is a limited remand to . . . comply with ICWA, with directions to the trial court that depend on the outcome of such notice"]; *In re A.G.*, *supra*, 204 Cal.App.4th at p. 1402 [reversal and remand with directions to investigate and obtain complete and accurate information about paternal relatives and to provide corrected ICWA notices to the relevant tribes, and then "[i]f no tribes intervene after receiving proper notice, the order terminating Father's parental rights shall be reinstated"]; *In re Brooke C.* (2005) 127 Cal.App.4th 377, 385 ["The lack of statutory notice . . . requires a limited remand to the juvenile court . . . to comply with

17

the notice requirements of ICWA, with directions to the juvenile court depending on the outcome of such notice."]; *Gabriel G.*, *supra*, 206 Cal.App.4th at pp. 1168-1169 [conditionally reversing order terminating parental rights and remanding with directions to provide notice under ICWA and to reinstate the order terminating parental rights if, after notice, no tribe indicates the minor is an Indian child].)

Based on this approach, we therefore conditionally reverse the trial court's judgment terminating John's parental rights. The matter is remanded for the limited purpose of conducting further inquiry of John regarding his possible Indian heritage. If, after reasonable inquiry, the trial court determines there is no tribe to which notice can be sent, the judgment shall be reinstated. If, on the other hand, the court's inquiry discloses a tribe which can be noticed, proper notice with all known ancestral information shall be sent. After notice is provided, if there is no response or if the tribe determines Christina is not an Indian child, the judgment shall be reinstated.[12] However, if the tribe determines Christina is an Indian child and the trial court determines ICWA applies to this case, the trial court is ordered to proceed in conformance with all provisions of ICWA.

---

[12]    As provided by statute, if no determinate response is received from the relevant tribe or the Bureau of Indian Affairs within 60 days of proper and adequate notice, the trial court may proceed as if ICWA does not apply, and in that instance it should reinstate the judgment terminating John's parental rights. (Welf. & Inst. Code, § 224.3, subd. (e)(3).)

DISPOSITION

The judgment is conditionally reversed as described above, and this matter is remanded for proceedings consistent with this opinion.


IRION, J.

WE CONCUR:


McCONNELL, P. J.


PRAGER, J.*

---

\*     Judge of the San Diego Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.